UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ANDERSON & STRUDWICK, | ) | Case No. 14-32679-KLP |
| INCORPORATED, | ) | |
| | ) | Chapter 7 |
| _Debtor._ | ) | |
| | ) | |
| STERNE AGEE GROUP, INC., _et al._, | ) | |
| | ) | |
| _Plaintiffs,_ | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 14-03175-KLP |
| | ) | |
| BRUCE E. ROBINSON, TRUSTEE, _et al._, | ) | |
| | ) | |
| _Defendants._ | ) | |
| | ) | |
| BRUCE E. ROBINSON, TRUSTEE, | ) | |
| | ) | |
| _Counterclaim Plaintiff,_ | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STERNE AGEE GROUP, INC. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| STERNE, AGEE & LEACH, INC., | ) | |
| | ) | |
| _Counterclaim Defendants._ | ) | |
| | ) | |

Vernon E. Inge, Jr. (Va. Bar No. 32699)
Christian K. Vogel (Va. Bar No. 75537)
LECLAIRRYAN, A PROFESSIONAL CORPORATION
Riverfront Plaza – East Tower, 8th Floor
951 East Byrd Street
Richmond, Virginia 23219
Telephone:       804.783.2003
Facsimile:       804.783.2294
E-Mail:          vernon.inge@leclairryan.com
                 christian.vogel@leclairryan.com

_Counsel for Defendant/Counterclaim Plaintiff, Bruce E. Robinson, Trustee_

**ANSWER OF DEFENDANT, BRUCE E. ROBINSON,
TRUSTEE, TO COMPLAINT AND COUNTERCLAIMS**

Defendant, Bruce E. Robinson, Trustee ("**Trustee**") for the bankruptcy estate of Anderson & Strudwick Incorporated ("**A&S**"), by counsel, states the following as his Answer to the Complaint filed herein by Plaintiffs, Sterne Agee Group, Inc.; Sterne, Agee & Leach, Inc.; and The Trust Company of Sterne Agee, Inc., as Escrow Agent ("**Plaintiffs**").

**ANSWER**

**Procedural Posture**

1.      The allegations contained in paragraph 1 of the Complaint are admitted.

2.      The allegations contained in paragraph 2 of the Complaint are admitted.

3.      The allegations contained in paragraph 3 of the Complaint are admitted.

**Jurisdiction and Venue**

4.      The allegations contained in paragraph 4 of the Complaint state legal conclusions to which no response is necessary.

5.      The allegations contained in paragraph 5 of the Complaint state legal conclusions to which no response is necessary.

6.      The allegations contained in paragraph 6 of the Complaint state legal conclusions to which no response is necessary.

**Parties**

7.      The Trustee lacks sufficient information either to admit or deny the allegations in paragraph 7 of the Complaint and, therefore, denies all allegations contained in paragraph 7.

8.      The Trustee lacks sufficient information either to admit or deny the allegations in paragraph 8 of the Complaint and, therefore, denies all allegations contained in paragraph 8.

9.      The Trustee lacks sufficient information either to admit or deny the allegations in paragraph 9 of the Complaint and, therefore, denies all allegations contained in paragraph 9.

10.     The allegations contained in paragraph 10 of the Complaint are admitted.

11.     The Trustee lacks sufficient information either to admit or deny the allegations in paragraph 11 of the Complaint and, therefore, denies all allegations contained in paragraph 11.

**Background**

12.     With regard to the allegations contained in paragraph 12 of the Complaint, the referenced document speaks for itself.  Any allegations in paragraph 12 inconsistent with the terms of the referenced document are denied.

13.     With regard to the allegations contained in paragraph 13 of the Complaint, the referenced document speaks for itself.  Any allegations in paragraph 13 inconsistent with the terms of the referenced document are denied.

14.     With regard to the allegations contained in paragraph 14 of the Complaint, the referenced document speaks for itself.  Any allegations in paragraph 14 inconsistent with the terms of the referenced document are denied.

15.     With regard to the allegations contained in paragraph 15 of the Complaint, the referenced document speaks for itself.  Any allegations in paragraph 15 inconsistent with the terms of the referenced document are denied.

16.     With regard to the allegations contained in paragraph 16 of the Complaint, the referenced document speaks for itself.  Any allegations in paragraph 16 inconsistent with the terms of the referenced document are denied.

17.    With regard to the allegations contained in paragraph 17 of the Complaint, the referenced document speaks for itself.  Any allegations in paragraph 17 inconsistent with the terms of the referenced document are denied.

18.    With regard to the allegations contained in paragraph 18 of the Complaint, the referenced document speaks for itself.  Any allegations in paragraph 18 inconsistent with the terms of the referenced document are denied.

19.    With regard to the allegations contained in paragraph 19 of the Complaint, the referenced document speaks for itself.  Any allegations in paragraph 19 inconsistent with the terms of the referenced document are denied.

20.    With regard to the allegations contained in paragraph 20 of the Complaint, the referenced document speaks for itself.  Any allegations in paragraph 20 inconsistent with the terms of the referenced document are denied.

21.    With regard to the allegations contained in paragraph 21 of the Complaint, the referenced document speaks for itself.  Any allegations in paragraph 21 inconsistent with the terms of the referenced document are denied.

22.    With regard to the allegations contained in paragraph 22 of the Complaint, the referenced document speaks for itself.  Any allegations in paragraph 22 inconsistent with the terms of the referenced document are denied.

23.    With regard to the allegations contained in paragraph 23 of the Complaint, the referenced document speaks for itself.  Any allegations in paragraph 23 inconsistent with the terms of the referenced document are denied.  The Trustee does not have sufficient information either to admit or deny the remaining allegations in paragraph 23 and, as such, they are denied.

24.     The Trustee lacks sufficient information either to admit or deny the allegations in paragraph 24 of the Complaint and, therefore, denies all allegations contained in paragraph 24.

25.     The Trustee lacks sufficient information either to admit or deny the allegations in paragraph 25 of the Complaint.

26.     The allegations contained in paragraph 26 of the Complaint state legal conclusions to which no response is necessary.  With respect to any factual allegations contained in paragraph 26, the Trustee lacks sufficient information either to admit or deny such allegations and, therefore, denies all allegations contained in paragraph 26.

27.     The Trustee lacks sufficient information either to admit or deny the allegations in the first sentence of paragraph 27 of the Complaint and, therefore, denies all allegations contained in the first sentence of paragraph 27.  With respect to the second sentence of paragraph 27, the referenced documents speak for themselves and any allegations inconsistent with the terms of the referenced documents are denied.

28.     The Trustee lacks sufficient information either to admit or deny the allegations in paragraph 28 of the Complaint and, therefore, denies all allegations contained in paragraph 28.

29.     The Trustee lacks sufficient information either to admit or deny the allegations in paragraph 29 of the Complaint and, therefore, denies all allegations contained in paragraph 29.

30.     With regard to the allegations contained in paragraph 30 of the Complaint, the referenced documents speak for themselves.  Any allegations in paragraph 30 inconsistent with the terms of the referenced documents are denied.  The Trustee lacks sufficient information either to admit or deny any remaining allegations in paragraph 30 of the Complaint and, therefore, denies all remaining allegations contained in paragraph 30.

31.    The allegations contained in paragraph 31 of the Complaint state legal conclusions to which no response is necessary.  With respect to any factual allegations contained in paragraph 31 of the Complaint, the referenced documents speak for themselves and any allegations inconsistent with the terms of the referenced documents are denied.

32.    The allegations contained in paragraph 32 of the Complaint state a legal conclusion to which no response is necessary.

33.    The allegations contained in paragraph 33 of the Complaint state a legal conclusion to which no response is necessary.  With regard to the factual allegations contained in paragraph 33 of the Complaint, the referenced documents speak for themselves and any allegations inconsistent with the terms of the referenced documents are denied.

34.    With regard to the allegations contained in paragraph 34 of the Complaint, the Schedules and Statement of Financial Affairs filed in the A&S bankruptcy case speak for themselves.  Any allegations contained in paragraph 34 that are inconsistent with the Schedules and Statement of Financial Affairs filed in the A&S bankruptcy case are denied.

35.    With regard to the allegations contained in paragraph 35 of the Complaint, the Trustee admits that he discussed this case with counsel for the Plaintiffs in August, 2014, prior to his engagement of counsel in this case.  The Trustee further admits that he received a proposed *Motion to Approve Compromise* from counsel for the Plaintiffs on August 26, 2014.  The Trustee denies all other allegations contained in paragraph 35 of the Complaint.

36.    With regard to the allegations contained in paragraph 36 of the Complaint, the Trustee admits that he rejected the proposed *Motion to Approve Compromise*.  The Trustee denies all other allegations contained in paragraph 36 of the Complaint.

6

37.     The allegations contained in paragraph 37 of the Complaint state a legal conclusion to which no response is necessary.  With regard to any factual allegations contained in paragraph 37 of the Complaint, the Trustee does not have sufficient information to either admit or deny the allegations and, therefore, such allegations are denied.

## Count I – Declaratory Judgment

38.     The Trustee restates his answers to paragraphs 1 through 37 as though fully set forth herein.

39.     The allegations contained in paragraph 39 of the Complaint state a legal conclusion to which no response is necessary.  The Trustee denies that he has refused to acknowledge any position with respect to the Agreements.  With regard to any other factual allegations contained in paragraph 39 of the Complaint, the Trustee lacks sufficient information to either admit or deny the allegations and, therefore, such allegations are denied.

40.     The Trustee lacks sufficient information either to admit or deny the allegations in paragraph 40 of the Complaint and, therefore, denies all allegations contained in paragraph 40.

41.     With regard to the allegations contained in paragraph 41 of the Complaint, the referenced documents speak for themselves.  The Trustee lacks sufficient information either to admit or deny any remaining allegations in paragraph 41 of the Complaint and, therefore, denies all allegations contained in paragraph 41.

42.     The allegations contained in paragraph 42 of the Complaint state a legal conclusion to which no response is necessary.  With regard to any factual allegations contained in paragraph 42 of the Complaint, the Trustee does not have sufficient information to either admit or deny the allegations and, therefore, such allegations are denied.

43.     The allegations contained in paragraph 43 of the Complaint state a legal conclusion to which no response is necessary.

44.     The allegations contained in paragraph 44 of the Complaint state a legal conclusion to which no response is necessary.  With regard to the factual allegations contained in paragraph 44 of the Complaint, the referenced documents speak for themselves.

45.     The allegations contained in paragraph 45 of the Complaint state a legal conclusion to which no response is necessary.

46.     The allegations contained in paragraph 46 of the Complaint state a legal conclusion to which no response is necessary.

47.     The allegations contained in paragraph 47 of the Complaint state a legal conclusion to which no response is necessary.

48.     With regard to the allegations contained in paragraph 48 of the Complaint, the referenced documents speak for themselves.  Any allegations contained in paragraph 48 that are inconsistent with the referenced documents are denied.

49.     With regard to the allegations contained in paragraph 49 of the Complaint, the referenced documgents speak for themselves.  Any allegations contained in paragraph 49 that are inconsistent with the referenced documents are denied.

50.     Paragraph 50 of the Complaint constitutes the Plaintiffs' prayer for relief to which no response is necessary.

51.     The remainder of the Complaint sets forth the Plaintiffs' prayer for relief, to which no response is necessary.  To the extent that a response is appropriate, the allegations contained therein are denied.

52.     All allegations not specifically admitted are hereby denied.

**Affirmative Defenses**

Having fully answered the allegations contained in the Complaint against him, Defendant, Bruce E. Robinson, Trustee ("**Trustee**") for the bankruptcy estate of Anderson & Strudwick Incorporated, sets forth his Affirmative Defenses as follows:

1.     The Plaintiffs' claim must be denied as inconsistent with the Agreements.

2.     The Escrow Funds cannot be used to reimburse Plaintiffs for successor liability claims.

3.     The Plaintiffs failed to properly file claims for the Escrow Funds pursuant to the terms of the Agreements.

4.     The Plaintiffs failed to properly address objections to the Escrow Claims pursuant to the terms of the Agreements.

5.     The Trustee reserves the right to supplement, amend, or add to his Affirmative Defenses as additional information becomes available in discovery.

WHEREFORE, Defendant, Bruce E. Robinson, Trustee, respectfully requests that (a) the relief requested in the Complaint be denied, (b) the Court enter an order requiring the Trust Company of Sterne Agee, Inc. to turn over all funds held by it constituting any portion of the purchase price under the Definitive Agreement to the Trustee, and (c) the Court grant such other further relief as it deems appropriate.

**COUNTERCLAIMS AGAINST STERNE AGEE
GROUP, INC. AND STERNE, AGEE & LEACH, INC.**

Defendant/Counterclaim Plaintiff, Bruce E. Robinson, Trustee ("**Trustee**") for the bankruptcy estate of Anderson & Strudwick Incorporated ("**A&S**," or "**Debtor**"), by counsel,

alleges as his counterclaims against Sterne Agee Group, Inc. ("**SAG**") and its wholly-owned subsidiary, Sterne, Agee & Leach, Inc. ("**SALI**," and together with SAG, "**Sterne Agee**," or "**Plaintiffs**") as follows:

## Procedural Background

1. On June 13, 2014, an order for relief was entered against A&S under chapter 7 of the Bankruptcy Code (the "**Order for Relief**").

2. On June 17, 2014, the Trustee was appointed chapter 7 trustee in the A&S bankruptcy case.

3. On December 1, 2014, the Defendants and The Trust Company of Sterne Agee, Inc., as Escrow Agent ("**Sterne Agee Trust Company**"), filed their Complaint against A&S and Anderson & Strudwick Investment Corporation ("**ASIC**") seeking a declaratory judgment from this Court that a certain portion of the purchase price under that certain Definitive Agreement dated November 15, 2011, does not constitute property of the bankruptcy estate of A&S (the "**Complaint**").

## Jurisdiction and Venue

4. The Trustee brings this action pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), sections 105, 544, and 550 of Title 11 of the United States Code (the "**Bankruptcy Code**") and 28 U.S.C. §§ 2201 and 2202.

5. The Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §§ 157(b) and 1334. This action is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

6. Venue of this action is proper pursuant to 28 U.S.C. § 1409.

## **Nature of the Action**

7.     Through this action, the Trustee seeks to hold Sterne Agee liable for the debts of

A&S as reflected in the proofs of claim filed in A&S's bankruptcy case, or, in the alternative,

avoid the transaction entered into by Sterne Agee, A&S and ASIC as being fraudulent.  As

further identified herein, Sterne Agee and the principals/shareholders of A&S and ASIC

completed a transaction at the end of 2011 with the goal of separating A&S's assets from its

significant liabilities for the benefit of Sterne Agee and A&S's and ASIC's

principals/shareholders.  Through the transaction, Sterne Agee gained A&S's offices, brokers,

and substantial assets under management, among other assets, while refusing to pay the large

majority of A&S's obligations.  A&S's principals received positions with Stern Agee, payments

disguised as retention bonuses, ownership interests in Sterne Agee, and the assumption by Sterne

Agee of loans owed by the principals to A&S or ASIC that otherwise would have been subject to

creditor process.  The only parties in interest that did not benefit from the Sterne Agee

transaction were the creditors of A&S, as A&S had minimal, if any, assets remaining following

the Sterne Agee transaction.  The creditors of A&S were substantially harmed by the transaction

with Sterne Agee, which was designed to avoid payment to the creditors while transferring all of

the value to the partners and Sterne Agee.

## **Factual Background**

8.     In the face of potential claims for its role as underwriter for the initial public

offering of Tibet Pharmaceuticals, Inc. and other liabilities, SAG, SALI, ASIC and A&S entered

into that certain Definitive Agreement dated November 15, 2011, wherein SALI purchased the

majority, if not all, of the assets of A&S and ASIC and left behind the non-beneficial liabilities

(the "**Purchase Agreement**").  A copy of the Purchase Agreement is attached to the Complaint as Exhibit A.

9.      ASIC was the holding company of A&S and A&S was a wholly-owned subsidiary of ASIC.

10.     Pursuant to the Purchase Agreement, A&S granted SALI the right to hire A&S's employees in SALI's sole discretion and to transfer those employees' "assets under management" to SALI.  (Purchase Agreement, section 1.1).

11.     All directors of A&S and ASIC, which constituted the large majority of A&S and ASIC's shareholders, were offered positions with Sterne Agee and accepted those positions, with the exception of Milton Turner, who was not employed previously by A&S.

12.     The majority of the A&S and ASIC shareholders are now owners of Sterne Agee as employees of Sterne Agee.

13.     All of A&S's Branch Office Managers became Branch Office Managers at SALI in the Charlotte, North Carlina; Columbia and Mt. Pleasant, South Carolina; Knoxville, Tennessee; and Fredericksburg, Norfolk, and Richmond, Virginia locations.  Branch Officer Manager is an officer position at SALI.

14.     Shortly after acquiring A&S's business, Damon Joyner, A&S's president and CEO, became Senior Managing Director with SALI.

15.     SALI also acquired the predominate portion of A&S's sales force.

16.     As of the date of entry of the Order for Relief, Donald Newlin, who was Office Manager of the Fredericksburg, Virginia office of A&S and SALI, also served as a director of A&S and ASIC, even while employed by Sterne Agee.

17.     SALI also purchased all assets of A&S "necessary, as determined by Buyer, for the Hired Employees to operate as employees of Buyer …" and continue A&S's business, including all equipment, furniture, fixtures and other tangible assets of Seller.  (Purchase Agreement, section 1.1).

18.     Under the terms of the Purchase Agreement, SALI assumed only the liabilities of A&S necessary for the continued operation of A&S's business, including leases for A&S's multiple office locations and any contract or agreement that "Buyer determines is necessary to assume in Buyer's sole discretion."  (Purchase Agreement, sections 1.3 and 1.4).

19.     In an effort to shed liability for the Tibet IPO and other liabilities not necessary for the continued operation of A&S's business, the Purchase Agreement provided for the exclusion of certain liabilities, including liabilities to employees that SALI deemed not beneficial to A&S's continued business and liabilities associated with A&S's investment banking business, which underwrote the Tibet IPO.  (Purchase Agreement, section 1.4).

20.     A portion of the purchase price under the Purchase Agreement was paid with shares of SAG.  (Purchase Agreement, section 2.1).

21.     The total amount of the purchase price under the Purchase Agreement was reduced by the amount of "retention incentives," up to $1,400,000.00, paid by SALI to the employees of A&S that it retained, many, if not all, of which held ownership interests in A&S through its holding company, ASIC.

22.     A portion of the purchase price under the Purchase Agreement also went to pay off a large loan owed to an affiliate of a director of ASIC, Milton Turner, at the direction of the A&S and ASIC boards, which were composed of employees of Sterne Agee.

23.     Sterne Agee provided for $1 million of the purchase price under the Purchase

Agreement, in the form of SAG shares, to be held pursuant to the terms of the Purchase

Agreement to pay obligations of Sterne Agee as successor to A&S.   (Purchase Agreement,

section 2.2(c); *see* Complaint at paragraph 40).

24.     In a press release from SAG's website dated December 14, 2011, entitled "Sterne

Agee Completes Acquisition of Private Client Group of Richmond, Virginia Firm, Anderson &

Strudwick," Damon Joyner explained that "[t]he only change Anderson & Strudwick's existing

clients will experience is the enhanced financial strength of Sterne Agee's more than 100 years

of service excellence."   A copy of the December 14, 2011 press release is attached hereto as

**Exhibit A**.

25.     Additionally, in an October 5, 2011 press release, Sterne Agee indicated that it

had "entered into a letter of intent to *acquire* the Richmond, Virginia based brokerage firm –

Anderson & Strudwick Incorporated."  (emphasis added)  A copy of the October 5, 2011 press

release is attached hereto as **Exhibit B**.

26.     Following Sterne Agee's acquisition of A&S, A&S was left with no remaining

assets with which to operate its business or pay its creditors and, therefore, ceased operations.

27.     In a Richmond BizSense article dated December 15, 2010, titled "Anderson

Strudwick winds down," Donald Newlin indicated that it "will take some time to wind down the

company," and that "[t]he name – that'll pretty much vanish."  A copy of the December 15, 2011

Richmond BizSense article is attached hereto as **Exhibit C**.

28.     On May 1, 2013, Ming Yang and Robin Joachim Dartell, individually and on

behalf of all others similarly situated, filed their Consolidated Amended Class Action Complaint

seeking damages incurred by the Plaintiffs related to the Tibet IPO from A&S and Sterne Agee as successor to A&S (the "**Class Action Suit**").  *See Ming Yang, et al. v. Tibet Pharmaceuticals, Inc., et al*, Case No. 14-cv-3620 (FSH)(MAH) (D.N.J.).

29.     Among other things, the Class Action Suit alleges that

a.     On January 24, 2011, A&S served as underwriter of Tibet's initial public offering and sold $16.5 million of Tibet's stock to investors by means of a false and misleading initial public offering prospectus that misrepresented Tibet as a financially sound and profitable company when Tibet had defaulted on a $4.54 million loan secured by Tibet's operating assets (Class Action Suit at paragraph 2);

b.     On September 10, 2010, a Chinese court entered judgment against Tibet for $4.54 million.  Tibet did not pay the judgment.  On January 10, 2011, two weeks prior to the IPO, the court entered an order permitting the bank to seize all of Tibet's operating assets (Class Action Suit at paragraph 3);

c.     When A&S sold $16.5 million of Tibet stock to investors, Tibet had lost its entire business.  A&S sold investors stock in a defunct company whose assets were being seized by the bank and which was on the verge of bankruptcy (Class Action Suit at paragraph 4);

d.     The value of Tibet dropped to zero and investors suffered a complete loss of their investment (Class Action Suit at paragraph 5); and

e.     Sterne Agee is liable for the acts of A&S as successor-in-interest (Class Action Suit at paragraph 34).

30.     In addition to the Class Action Suit, three additional suits have been filed against Sterne Agee asserting that Sterne Agee is liable for the obligations of A&S as successor to A&S: *Downs v. Anderson & Strudwick Inc., et al*. (FINRA Dispute Resolution No. 12-00842); *Koth v. Anderson & Strudwick, Inc., et al.* (FINRA Arbitration No. 13-02214); *Saunders v. Sterne, Agee & Leach, Inc., et al.* (FINRA Arbitration No. 13-03335) (collectively, the "**Other Litigation Matters**").

31.     Sterne Agee has settled claims asserted against it as successor to A&S in the Other Litigations Matters, two of which were settled after the Order for Relief was entered.

32.     On October 21, 2014, L. McCarthy Down, III filed proof of claim number 1 in the A&S bankruptcy case in the amount of $413,676.25.

33.     On December 9, 2014, the putative class in *Dartell v. Tibet Pharm. Inc., et al.*, filed proof of claim number 4 in the A&S bankruptcy case in the amount of $21,591,945.21 (the "**Class Action Suit Claim**").  A copy of the *Dartell* Complaint is attached to the Class Action Suit Claim.

34.     As of January 2, 2015, a total of $22,040,777.05 in unsecured claims have been filed in the A&S bankruptcy case and it is anticipated that more unsecured claims will be filed.

35.     Sterne Agee and the principals of the Debtor and ASIC entered into the Purchase Agreement with the intention of transferring all assets of A&S away from A&S's creditors.

36.     Had the principals and shareholders of A&S and ASIC not transferred all valuable assets of A&S to Sterne Agee, all assets of A&S, including outstanding loans owed to A&S or ASIC by the principals and employees of A&S, would have been subject to creditor process.

37.     In Sterne Agee's and the A&S principals' efforts to separate A&S's assets from its liabilities, Sterne Agee became obligated as successor to A&S on all of A&S's liabilities through the Purchase Agreement.

38.     Sterne Agee is also liable for the debts of A&S on mere continuation and *de facto* merger theories of successor liability due to the continuity of ownership, the termination of A&S's business following the Purchase Agreement, the assumption of liabilities of A&S necessary for uninterrupted continuation of business, and the continuity of management, personnel, physical locations, asset and general business operations, among other things more specifically identified herein.

39.     Sterne Agee is also liable for the debts of A&S as its successor because the Purchase Agreement constitutes a fraudulent attempt to escape A&S's obligations.

40.     Alternatively, the Purchase Agreement is voidable as a fraudulent transfer.

**COUNT I**
**Express Assumption of Liabilities**

41.     The allegations set forth in forgoing paragraphs are incorporated herein by reference.

42.     Sterne Agee publically held out the transaction with A&S and ASIC as an acquisition of A&S's business, not just certain assets of A&S.

43.     By holding back $1 million of the purchase price in the form of SAG stock to reimburse Sterne Agee for any expenses incurred by it as successor to A&S, the Purchase Agreement expressly provides for the assumption of all of A&S's liabilities by Sterne Agee.

44.     If the Purchase Agreement did not expressly provide for the assumption of A&S's liabilities by Sterne Agee, there would be no necessity for a hold back of the purchase amount for purposes of reimbursing Sterne Agee for its liability as successor to A&S.

## COUNT II
## Implied Assumption of Liabilities

45.     The allegations set forth in forgoing paragraphs are incorporated herein by reference.

46.     Sterne Agee publically held out the transaction with A&S and ASIC as an acquisition of A&S's business, not just certain assets of A&S.

47.     By holding back $1 million of the purchase price in the form of SAG stock to reimburse Sterne Agee for any expenses incurred by it as successor to A&S, the Purchase Agreement impliedly provides for the assumption of all of A&S's liabilities by Sterne Agee.

48.     If the Purchase Agreement did not impliedly provide for the assumption of A&S's liabilities by Sterne Agee, there would be no necessity for a hold back of the purchase amount for purposes of reimbursing Sterne Agee for its liability as successor to A&S.

## COUNT III
## Declaration of Successor Liability

49.     The allegations set forth in the foregoing paragraphs are incorporated herein by reference.

50.     Sterne Agee completed a *de facto* merger with A&S through the Purchase Agreement and Sterne Agee is the mere continuation of A&S.  Sterne Agee retained A&S's management, personnel, physical locations, assets and general business operations.  A&S ceased its ordinary business and dissolved as soon as it legally and practically could following entry into

the Purchase Agreement with Sterne Agee.  Sterne Agee assumed certain liabilities of A&S that were necessary for the uninterrupted continuation of A&S's business.

51.     The owners of A&S/ASIC became owners of Sterne Agee as part of the Purchase Agreement transaction or thereafter, in addition to being paid a large portion of the purchase price via "retention bonuses" and repayment of loans.

52.     The majority, if not all, of the purchase price under the Purchase Agreement went to (a) employees/shareholders of A&S and ASIC disguised as a "retention bonus," (b) pay a loan due to the one director of ASIC that was not an employee that transferred to Sterne Agee, and (c) fund a litigation fund for liabilities of Sterne Agee as successor to A&S.

53.     Through the Purchase Agreement transaction, the largest A&S shareholders turned their equity in A&S/ASIC into jobs with Sterne Agee, equity in Sterne Agee and a retention bonus while A&S was left with no assets to pay its creditors.

54.     Through the Purchase Agreement transaction, Sterne Agee attempted to acquire all assets of A&S while leaving behind all non-beneficial liabilities of A&S such that A&S was left with no assets and no operating business with which to pay its remaining creditors.

55.     The directors of A&S and Sterne Agee retained all the value in A&S while avoiding its liabilities.

56.     To the extent Sterne Agee did not expressly or impliedly assume the liabilities of A&S, Sterne Agee should be held liable for A&S's debts as being the mere continuation of A&S or as having completed a *de facto* merger with A&S.

57.     Additionally, the purchase transaction between Stern Agee and A&S was fraudulent and made in order to escape A&S's obligations.

## COUNT IV
### Avoidance of Fraudulent Transfers Pursuant to 11 U.S.C. § 544(b)(1)
### and Section 55-80 of the Virginia Code

58.     The allegations set forth in forgoing paragraphs are incorporated herein by reference.

59.     The transfers made through the Purchase Agreement were made with intent to delay, hinder or defraud creditors from what they are lawfully entitled.

60.     The transfers made through the Purchase Agreement are avoidable pursuant to section 544(b) of the Bankruptcy Code and section 55-80 of the Virginia Code.

## COUNT V
### Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550(a)

61.     The allegations set forth in the forgoing paragraphs are incorporated herein by reference.

62.     Upon the avoidance of the transfers made through the Purchase Agreement under section 544 of the Bankruptcy Code, the Trustee may recover such transfers or the value thereof from Sterne Agee or any mediate or immediate transferee pursuant to section 550(a) of the Bankruptcy Code.

WHEREFORE, the Trustee, by counsel, respectfully prays for a judgment against Sterne Agee Group, Inc. and Sterne, Agee & Leach, Inc. that provides for:

(1)     a declaration under 28 U.S.C. § 2201 and 2202, or otherwise, that Sterne Agee Group, Inc. and Sterne, Agee & Leach, Inc. are jointly and severally liable for A&S's debts in the combined amount of all claims filed in the A&S bankruptcy case and entry of judgment in the combined amount of all claims filed in the A&S bankruptcy case in favor of the Trustee against Sterne Agee Group, Inc. and Sterne, Agee & Leach, Inc. jointly and severally;

(2)      Avoidance and recovery of the transfers, or the value thereof, made under the

Purchase Agreement pursuant to sections 544 and 550 of the Bankruptcy Code;

(3)      An award of costs and disbursements incurred by the Trustee in this action; and

(4)      An award of such other relief as may be just and proper.

BRUCE E. ROBINSON, TRUSTEE


/s/ Christian K. Vogel
Counsel

Vernon E. Inge, Jr. (Va. Bar No. 32699)
Christian K. Vogel (Va. Bar No. 75537)
LECLAIRRYAN, A PROFESSIONAL CORPORATION
Riverfront Plaza – East Tower, 8th Floor
951 East Byrd Street
Richmond, Virginia 23219
Telephone:     804.783.2003
Facsimile:     804.783.2294
E-Mail:        vernon.inge@leclairryan.com
               christian.vogel@leclairryan.com

*Counsel for Defendant, Bruce E. Robinson, Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of January, 2015, a true and correct copy of the foregoing Answer of Defendant, Bruce E. Robinson, Trustee, to Complaint and Counterclaims was served via electronic delivery and/or first-class mail, postage prepaid, upon the following:

Augustus C. Epps, Jr.
Michael D. Mueller
Jennifer M. McLemore
CHRISTIAN & BARTON, LLP
909 East Main Street, Suite 1200
Richmond, Virginia 23219

Jayna Partain Lamar
J. LeLand Murphree
MAYNARD, COOPER & GALE, P.C.
2400 Regions Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203

*Counsel for Plaintiffs and Counterclaim Defendants*

/s/ Christian K. Vogel
Christian K. Vogel

# EXHIBIT A

sterne
agee

**FOR IMMEDIATE RELEASE**
December 14, 2011

**Contact:** William K. Holbrook
Chief Operating Officer
205.380.1765
wholbrook@sterneagee.com

# Sterne Agee Completes Acquisition of the Private Client Group of Richmond, Virginia Firm, Anderson & Strudwick

*Expands Private Client Footprint in Eastern and Mid-Atlantic Region,*
*50 Advisors, Seven Offices*

**Birmingham, Alabama**– Sterne Agee Group, Inc., one of the largest privately-owned financial holding companies in the country and headquartered in Birmingham, Alabama, announced today the completion of its acquisition of the private client group of Anderson & Strudwick, Incorporated, a Richmond, Virginia-based brokerage firm.

This acquisition expands Sterne Agee's wealth management business in the Eastern and Mid-Atlantic regions, as well as in Knoxville, Tennessee, by adding seven private client group offices that include approximately 50 advisors.

"The only change Anderson & Strudwick's existing clients will experience is the enhanced financial strength of Sterne Agee's more than 100 years of service excellence," said Damon Joyner, former president and CEO at Anderson & Strudwick and now Senior Managing Director with Sterne Agee. "Being part of Sterne Agee is very positive for our clients and a perfect fit for all. Plus, we are having a smooth transition into the firm and are excited about 2012."

The Anderson & Strudwick acquisition – as well as the acquisition earlier this year of San Francisco-based Nollenberger Capital Partners – highlights Sterne Agee's continued commitment to the expansion of its business from coast-to-coast. The Sterne Agee family of companies provides fixed income and equity institutional and retail securities brokerage services, research, securities clearing, asset management, investment banking, public finance and trust services.

"We are pleased to expand our business in the Mid-Atlantic states," said Jim Holbrook, Chairman and CEO of Sterne Agee Group, Inc. "The expansion in these markets will continue to strengthen Sterne Agee's private client group business."

more

**About Sterne Agee**

Founded in 1901, Sterne Agee is one of the oldest and largest privately-owned investment banking firms in the country employing nearly 1,200 employees in 50 offices in 22 states. Sterne Agee is the trade name used by all affiliates of Sterne Agee Group, Inc., including Sterne, Agee & Leach, Inc., member of NYSE, FINRA, and SIPC. For more information, visit www.sterneagee.com.

# # #

# EXHIBIT B

**sterne agee**

**FOR IMMEDIATE RELEASE**

### Sterne Agee Enters Into Letter of Intent to Acquire Anderson & Strudwick

**Birmingham, AL (October 5, 2011)** – Sterne Agee Group, Inc., a financial holding company headquartered in Birmingham, Alabama, has entered into a letter of intent to acquire the Richmond, Virginia based brokerage firm – Anderson & Strudwick Incorporated.  The proposed acquisition is subject to customary due diligence and regulatory approvals.  Sterne Agee expects the acquisition to be completed in the next 90 days.

With this acquisition, Sterne Agee will expand its wealth management business in the eastern United States, Knoxville, Tennessee and Chicago, Illinois through Anderson & Strudwick's eighteen offices and highlights Sterne Agee's continued commitment to the expansion of its business.  The Sterne Agee family of companies provides investment banking, research, securities clearing, asset management, trust, and institutional and retail securities brokerage services.

"We are excited at the opportunity to expand our eastern presence with the acquisition of Anderson & Strudwick and believe that Anderson & Strudwick has built an impressive business with a culture similar to ours in key markets in the eastern United States," said Jim Holbrook, Chairman and CEO of Sterne Agee Group, Inc.

Damon Joyner, President and CEO at Anderson & Strudwick, will become a Senior Managing Director at Sterne Agee.  "Our team is very excited to join a largely employee-owned firm such as Sterne Agee and believe that Sterne Agee is the right fit for our clients and employees," said Mr. Joyner.

**About Sterne Agee**

Founded in 1901, Sterne Agee is one of the oldest and largest privately-owned investment banking firms in the country employing nearly 1,200 employees in 45 offices in 23 states. Sterne Agee is the trade name used by all affiliates of Sterne Agee Group, Inc., including Sterne, Agee & Leach, Inc., member of NYSE, FINRA, and SIPC. For more information, visit www.sterneagee.com.

For more information, please contact:

William K. Holbrook
Chief Operating Officer
wholbrook@sterneagee.com

**###**

# EXHIBIT C

# Anderson Strudwick winds down

ZMICHAEL SCHWARTZ DECEMBER 15, 2011



After 63 years in the Richmond financial scene, the name Anderson Strudwick will soon be history.

Alabama-based **Sterne Agee** closed a deal Monday to acquire **Anderson Strudwick**, which up to that point had remained one of Richmond's last independent brokerage firms.

**Don Newlin,** Anderson Strudwick's chairman, said the transition to Sterne Agee won't happen overnight.

"It will take some time to wind down the company," said Newlin, who has been with the firm for 42 years. "The name — that'll pretty much vanish."

And a sizeable chunk of Anderson Strudwick is disappearing.

As part of the deal, Sterne Agee took on just seven of Anderson Strudwick's 15 offices and about 50 of its brokers. Leading up to the deal, the firm had about 150 employees and about 90 brokers.

Anderson Strudwick grew to have more than 20 offices across the country, although it has been downsizing in recent months. It closed two offices in July, and several of its longtime brokers left for other firms this year.

"When it came down to it, there were some offices Sterne Agee really didn't want," Newlin said.

Sterne Agee COO Billy Holbrook said the company would retain Anderson Strudwick's offices in Richmond, Fredericksburg, Norfolk, Knoxville, Tenn., Columbia, S.C., Charlotte and Charleston, S.C.

Many Anderson Strudwick employees didn't wait around long enough to see what would become of their jobs.

"Some of them had already left," said Holbrook. "After the deal was announced, a few of the offices departed on their own and went to other firms."

The deal with Sterne Agee was announced in early October, when the two sides signed a letter of intent.

Founded in 1948, Anderson Strudwick had been shopping itself around for several years and was almost sold — twice — to Wunderlich Securities in 2009.

In addition to its brokerage business, the firm has investment banking and asset management divisions, although the bulk of its revenue has historically come from the brokerage side.

Sterne Agee will give Anderson Strudwick a much-needed stronger capital backing.

The company's capital base had diminished over the past two year or so, and several deals to bring in new capital never materialized.

Sterne Agee also has the ability to clear its own trades, a service that will come in handy for Anderson Strudwick, which saw its ties to Pershing (one of the largest and most respected clearinghouses in the United States) severed this year.

Newlin said he's still getting used to answer the phone "Sterne Agee."

"I picked it up in a hurry the other day and reverted to form and said, 'Anderson Strudwick,'" Newlin said. "It happens and is something that will hard to get over."

He also has to get used to the new title on his Sterne Agee business cards.

"I'm a managing director now. I don't know exactly what that means," he said. "I'm here to be a stock broker, and that's what I'll do."

*Michael Schwartz is a BizSense reporter.  Please send news tips to* Michael@richmondbizsense.com.

http://www.richmondbizsense.com/2011/12/15/anderson-strudwick-winds-down/