## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **ANDERSON & STRUDWICK,** | ) | **Bankruptcy Case No.:  14-32679-KLP** |
| **INCORPORATED,** | ) | |
| | ) | **Chapter 7** |
| DEBTOR. | ) | |
| _____ | ) | _____ |
| | ) | |
| **STERNE AGEE GROUP, INC.;** | ) | |
| **STERNE, AGEE & LEACH, INC.; AND** | ) | |
| **THE TRUST COMPANY OF STERNE** | ) | |
| **AGEE, INC., AS ESCROW AGENT,** | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| v. | ) | **Adv. Pro. No. 14-03175-KLP** |
| | ) | |
| **BRUCE E. ROBINSON, TRUSTEE; AND** | ) | |
| **ANDERSON & STRUDWICK INVESTMENT** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| DEFENDANTS. | ) | |

---

## MOTION TO DISMISS TRUSTEE'S COUNTERCLAIMS
## AND SUPPORTING MEMORANDUM OF LAW

---

_____

Augustus C. Epps, Jr., Esquire (VSB No. 13254)
Michael D. Mueller, Esquire (VSB No. 38216)
Jennifer M. McLemore, Esquire (VSB No. 47164)
CHRISTIAN & BARTON, LLP
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone:  (804) 697-4100
Facsimile:  (804) 697-6112

*Counsel for Sterne Agee Group, Inc.; Sterne Agee &*
*Leach, Inc.; and The Trust Company of Sterne Agee, Inc.,*
*as Escrow Agent*

Jayna Partain Lamar, Esquire (admitted *pro hac vice*)
J. Leland Murphree, Esquire (admitted *pro hac vice*)
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions Harbert Plaza
Telephone: 205-254-1000
Facsimile: 205-254-1999

Plaintiffs Sterne Agee Group, Inc. ("SAG") and Sterne, Agee & Leach, Inc. ("SALI", together with SAG, the "SA Defendants") respectfully move this Honorable Court, pursuant to Rule 12 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to dismiss the Counterclaims [AP Dkt.[1] No. 5 at 9–21] (the "Counterclaims") asserted against them by Bruce E. Robinson (the "Trustee"), as Chapter 7 Trustee for Debtor Anderson & Strudwick, Incorporated (the "Debtor" or "Anderson & Strudwick"). As grounds therefor, the SA Defendants state as follows:

## INTRODUCTION

In response to a straightforward request for a declaratory judgment seeking a determination of whether certain escrow funds should be treated as property of the Debtor's bankruptcy estate, the Trustee has asserted speculative and premature Counterclaims alleging that: 1) the SA Defendants are liable for all of the Debtor's liabilities, purportedly in excess of $20 Million, under a "successor liability" theory (Counts I-III), or, in the alternative, 2) the SA Defendants' purchase of certain assets of the Debtor in 2011 is avoidable as a fraudulent transfer under Virginia law (Counts IV-V). The Trustee's Counterclaims lack merit under either bankruptcy or state law, and are nothing more than a thinly-veiled attempt by certain insider creditors to get a "second bite of the apple" through the Trustee's state law claims, presumptively brought under § 544(b) of 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"). The Counterclaims should be dismissed for lack of subject matter jurisdiction under Bankruptcy Rule 7012(b)(1). Moreover, even if the Court has subject matter jurisdiction over the Counterclaims, the Trustee's Counterclaims should be dismissed as conclusory allegations with no demonstrated basis in law

---

[1] All references to "AP Dkt." refer to the docket of the above-captioned adversary proceeding.

or fact and that otherwise fail to sufficiently state a claim under Bankruptcy Rules 7009(b) and 7012(b)(6).

## BACKGROUND

In December 2011, the SA Defendants acquired certain assets (the "Asset Purchase") of the Debtor and Anderson & Strudwick Investment Corporation ("ASIC", together with the Debtor, the "Sellers") pursuant to that certain Definitive Agreement dated November 15, 2011 [AP Dkt. No. 1, Ex. A] (the "Definitive Agreement"). The Definitive Agreement is clear, unambiguous and plainly allowed the SA Defendants to purchase some of the Debtor's assets and required the SA Defendants to assume only a small and specific portion of the Debtor's liabilities. *See* AP Dkt. No. 1 ¶ 12, at 3; *see also* AP Dkt. No. 5 ¶ 12, at 3. The assets that were made available for purchase were listed in section 1.1 of the Definitive Agreement, and section 1.2 makes clear that any assets not described in Section 1.1 are excluded from the sale. Definitive Agreement §§ 1.1, 1.2. Under section 1.3 of the Definitive Agreement, the SA Defendants agreed to assume only executory liabilities of the Debtor that were to be performed after closing, and only insofar as such executory liabilities related to (1) certain preexisting real property leases of the Debtor or (2) some other preexisting executory obligation of the Debtor under a contract, license, or warranty, but only if the SA Defendants expressly assumed such executory obligation and, further, only if the Debtor had incurred the obligation in the ordinary course of business. Definitive Agreement § 1.3. Making matters even clearer, section 1.4 of the Definitive Agreement, which is captioned "Excluded Liabilities[,]" provides that "under no circumstances shall [the SA Defendants] be deemed to assume or be obligated for any [l]iability of [the Debtor] arising out of or relating to" the Debtor's conduct before the closing date of the Definitive Agreement. The Excluded Liabilities section of the Definitive Agreement specifically

includes the Debtor's "operation of its investment banking business, whether prior to, at or after the [closing] . . . ." Definitive Agreement § 1.4. In short, the SA Defendants expressly and unambiguously did not "acquire" the Debtor, nor did it purchase all of the Debtor's assets and assume all of the liabilities of the Debtor. Rather, it purchased a subset of the Debtor's assets for valuable consideration and assumed only particular liabilities, and the Definitive Agreement governing the transaction expressly disclaimed – not once but *twice* – the type of liability the Trustee seeks to impose on the SA Defendants through his Counterclaims; that is, liability arising from the Debtor's pre-Definitive Agreement investment banking business. Definitive Agreement §§ 1.3, 1.4.

As is typical of asset acquisitions where the purchaser does not assume all liabilities of the seller, the SA Defendants required the Debtor and ASIC to indemnify the SA Defendants for any claims asserted by creditors of the Debtor and ASIC that the SA Defendants did not expressly assume. Definitive Agreement § 6.4. As partial consideration for the purchase and pursuant to the terms of the Definitive Agreement, shares of SAG common stock were deposited into an escrow account (the "Escrow Account"), where they were held in trust to provide a source of funds (the "Escrow Funds") to pay the indemnity obligations of the Debtor and ASIC to the SA Defendants. Definitive Agreement §§ 2.2, 2.6, 6.4. The Escrow Account and Escrow Funds are governed by an Escrow Agreement dated December 12, 2011 [AP Dkt. No. 1, Ex. B] (the "Escrow Agreement", together with the Definitive Agreement, the "Agreements").

Since the close of the purchase contemplated by the Definitive Agreement, multiple claims have been asserted against the SA Defendants by certain third parties seeking to hold the SA Defendants liable for the pre-petition obligations, acts or omissions of the Debtor and/or ASIC. Claimants have alleged that the SA Defendants are "successors-in-interest" to the Debtor

and ASIC. AP Dkt. No. 1 ¶ 23; *see also* AP Dkt. No. 5 ¶¶ 28–30, at 15–16. These claims include

the following legal proceedings (collectively, the "Litigation Matters"):

- *Dartell et al. v. Sterne Agee Group, Inc., et al.* (Case No. 12-89, U.S. District Court of the Virgin Islands – transferred to the U.S. District Court for the District of New Jersey, Case No. 14-cv-3620) consolidated with *Yang et al. v. Sterne Agee Group, Inc., et al.* (Case No. 12-54, U.S. District Court of the Virgin Islands, also transferred to the U.S. District Court for the District of New Jersey, Case No. 14-cv-3538);

- *Downs v. Anderson & Strudwick Incorporated, et al.* (FINRA Dispute Resolution No. 12-00842);

- *Koth v. Anderson & Strudwick, Inc., et al.* (FINRA Arbitration No. 13-02214); and

- *Saunders v. Sterne, Agee & Leach, Inc., et al.* (FINRA Arbitration No. 13-03335).

AP Dkt. No. 1 ¶ 23; *see also* AP Dkt. No. 5 ¶¶ 28–30, at 15–16.

The *Dartell* lawsuit, filed a year and a half after the Asset Purchase in May 2013, is a

putative class action lawsuit brought against the Debtor for alleged violations of federal

securities laws related to claimed misrepresentations in an Initial Public Offering Registration

Statement and Prospectus that the Debtor underwrote for Tibet Pharmaceuticals, Inc. ("Tibet"), a

British Virgin Islands company selling traditional Tibetan medicines in China. *See* Bankr. Case[2],

Claim 4-1 at 5–45; *see also* AP Dkt. No. 5 at 14–15 ¶¶ 28–29. In addition to the Debtor, Tibet's

auditor and a number of individuals associated with the transaction are also personally named co-

defendants with the Debtor, including L. McCarthy Downs, III ("Downs"), the petitioning

creditor of the Debtor's Bankruptcy (defined below). Downs was a managing director of the

Debtor at the time of the Tibet IPO, was a "designated observer" to the Tibet board, and was the

---

[2] All references to "Bankr. Case" refer to the above-captioned chapter 7 bankruptcy case.

Debtor's "lead investment banker" with a "significant influence" over the Tibet IPO. Bankr. Case, Claim 4-1 at 12.

Prior to filing the involuntary petition, Downs brought claims against the Debtor for unpaid severance pay. In that action, he also sought to hold the SA Defendants liable for his severance claims under a successor liability theory. Bankr. Case, Claim 1-1 at 6–11; AP Dkt. No. 5 ¶ 30, at 16. The SA Defendants entered into a confidential settlement agreement with Downs to resolve his claims against the SA Defendants. AP Dkt. No. 1 ¶ 27, at 6; *see also* AP Dkt. No. 5 ¶ 31, at 16. In accordance with the Agreements, a portion of the Escrow Funds were sold by the Escrow Agent and paid to the SA Defendants in accordance with the Escrow Claim related to the settled matter. AP Dkt. No. 1 ¶ 27, at 6; *see also* Escrow Agreement § 1.4.

After receiving a settlement payment via the Escrow Funds, Downs then obtained a default award and judgment against the Debtor through the efforts of his law firm, LeClairRyan, P.C. ("LeClair"). Bankr. Case, Claim 1-1 at 4–5. Downs, through LeClair, then filed an involuntary bankruptcy petition on May 14, 2014 (the "Petition Date"), under Chapter 7 of the Bankruptcy Code against the Debtor as Case No. 3:14-32679 [Bankr. Dkt.[3] No. 1] (the "Bankruptcy"). The Debtor failed to answer the Petition, and the Trustee was appointed the Chapter 7 Trustee in the Bankruptcy. Bankr. Dkt. No. 10; *see also* AP Dkt. No. 5 ¶¶ 2–3, at 2. Since his appointment, the Trustee retained Downs' counsel, LeClair, as his counsel in this Bankruptcy. *See* Bankr. Dkt. No. 33.

On December 1, 2014, the SA Defendants filed the current adversary proceeding against the Trustee, seeking a declaration under § 541 of the Bankruptcy Code and 28 U.S.C. §§ 2201 and 2202, the Declaratory Judgments Act (the "DJA"), of the parties' rights to the Escrow Funds and under the Agreements. AP Dkt. No. 1. The Trustee filed his Answer, essentially denying all

---

[3] All references to "Bankr. Dkt." refer to the docket of the above-captioned chapter 7 bankruptcy case.

but three allegations for "lack of sufficient information". However, the Trustee ostensibly has sufficient knowledge to assert the Counterclaims seeking to hold the SA Defendants liable for over $20 Million, which repeat almost verbatim the claims Downs asserted against the SA Defendants and settled prior to the Petition Date. AP Dkt. No. 5 at 9–21; *see also* Bankr. Case, Claim 1-1 at 6–11.

## LEGAL STANDARDS

Federal Rule 12(b)(1), made applicable to this adversary proceeding by Bankruptcy Rule 7012(b), requires dismissal of a claim when the court lacks subject matter jurisdiction to hear it. *See* Fed. R. Civ. P. 12(b)(1); Fed. R. Bankr. P. 7012(b); *see also A.W. ex rel. Wilson v. Fairfax Cnty. Sch. Bd.*, 548 F. Supp. 2d 219, 221 (E.D. Va. 2008). A court should dismiss a complaint for lack of subject matter jurisdiction "if the complaint fails to allege facts upon which subject matter jurisdiction can be based or if the jurisdictional allegations in the complaint are not true." *McLaughlin v. Safway Servs., LLC*, 429 F. App'x 347, 348 (4th Cir. 2011) (citing *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). The burden of establishing subject matter jurisdiction rests with the party asserting the claims. *McLaughlin*, 429 F. App'x at 348 (citing *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995)); *see also Brandsasse v. City of Suffolk*, 72 F. Supp. 2d 608, 613 (E.D. Va. 1999) ("It is the burden of the party claiming federal jurisdiction 'to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial power[s].'" (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975))). "The complaint must include those specific facts that are necessary to support the claim." *Brandsasse*, 72 F. Supp. 2d at 613 (citing *United States v. Hays*, 515 U.S. 737, 743 (1995)). Standing is a critical aspect of subject matter jurisdiction; that is, the Court should dismiss the Trustee's successor liability claims for want of jurisdiction if he cannot

establish standing to assert such claims. *See First Owners Ass'n of Forty Six Hundred Condo. Inc. v. Gordon Props., LLC* (*In re Gordon Props., LLC*), 478 B.R. 750, 756 (E.D. Va. 2012) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230–31 (1990)).[4]

Federal Rule 12(b)(6), made applicable to this adversary proceeding by Bankruptcy Rule 7012(b), requires courts to dismiss a claim that "fail[s] to state a claim upon which relief can be granted" under the following well-established standards. *See* Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b); *see also Islam v. Jackson*, 782 F. Supp. 1111, 1113 (E.D. Va. 1992). A complaint fails to state a claim upon which relief can be granted when it does not include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and that the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action" (internal citations omitted)). Thus, this pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To be sure, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions[.]" *See Twombly*, 550 U.S. at 555 (internal quotation omitted). "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[4] While the SA Defendants believe that the Trustee has no standing to bring his Counterclaims in the first instance, the SA Defendants expressly reserve all rights under *Stern v. Marshall*, 131 S. Ct. 2594 (2011), which rights are not waivable. *See Wellness Intern. Network, Ltd. v. Sharif*, 727 F.3d 751, 70 (7th Cir. 2013), *cert. granted in part*, *Wellness Intern. Network, Ltd. v. Sharif*, 134 S. Ct. 2901 (July 1, 2014).

reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also* Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008.  Conversely, a claim is due to be dismissed when it appears from the face of the complaint that the legal theories are "indisputably meritless." *White v. White*, 886 F.2d 721, 725 (4th Cir. 1989).  The "basic [pleading] deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Twombly*, 550 U.S. at 558.

## ARGUMENT

### I.    THE TRUSTEE DOES NOT HAVE STANDING TO ASSERT SUCCESSOR LIABILITY CLAIMS.

The Trustee broadly asserts in Counts I-III of the Counterclaims that, as a result of the Asset Purchase, the SA Defendants should be held liable for any and all of the Debtor's obligations to its creditors under three theories of successor liability: 1) express assumption of liabilities; 2) implied assumption of liabilities; and 3) the "de facto merger" or "mere continuation" doctrine. Whatever the theory, however, the Trustee does not have standing to assert successor liability claims against the SA Defendants.

### A.  The Trustee Has No Basis for Asserting Successor Liability Claims Under the Bankruptcy Code.

As an initial matter, the Trustee's successor liability claims should be dismissed for failure to cite *any* basis upon which the Trustee has standing to assert successor liability claims against the SA Defendants.  *See Shearson Lehman Hutton Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991) ("[T]he 'case or controversy' requirement coincides with the scope of powers the Bankruptcy Code gives a trustee, that is*, if a trustee has no power to assert a claim because it is not one belonging to the bankruptcy estate, then he also fails to meet the prudential limitation that the legal rights asserted must be his own*" (emphasis added)).  It is well settled that a

bankruptcy trustee has standing to assert state law claims against nondebtor parties "from two sources: (1) the rights of the debtor, 11 U.S.C. § 541, and (2) the rights of creditors of the debtor, 11 U.S.C. § 544. Federal bankruptcy law looks to state law for a definition of what interests are rights of the debtor or creditors of the debtor." *Steyr-Daimler-Puch of Am. Corp. v. Pappas* (*Steyr*), 852 F.2d 132, 135 (4th Cir. 1988) (citing *Butner v. United States*, 440 U.S. 48 (1979)). Standing is a critical aspect of subject matter jurisdiction; that is, the Court should dismiss the Trustee's successor liability claims for want of jurisdiction if he cannot establish standing to assert such claims. *See First Owners Ass'n of Forty Six Hundred Condo. Inc. v. Gordon Props., LLC* (*In re Gordon Props., LLC*), 478 B.R. 750, 756 (E.D. Va. 2012) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230–31 (1990)).

While the Trustee has clearly recognized this requirement by expressly pleading §§ 544(b)(1) and 550(a) of the Bankruptcy Code as the statutory bases for recovery of his fraudulent transfer claim under Counts IV and V of the Counterclaims, Counterclaims I-III are conspicuously silent regarding the statutory basis for the Trustee's successor liability claims. *See* AP Dkt. No. 5 at 17–19. Without addressing the statutory basis for the Trustee's successor liability claims, the Trustee has not demonstrated that he has standing to bring such claims, chiefly because he can make no such demonstration.  Counterclaims I-III should therefore be dismissed.

### B. The Trustee Does Not Have Standing Under 11 U.S.C. § 544 or 28 U.S.C. §§ 2201 or 2202 to Assert His Successor Liability Claims.

It is not the job of the SA Defendants or the Court to ascertain the Trustee's argument from his pleadings, but the Trustee's pleading demands such action. The Trustee has made no reference to § 541 of the Bankruptcy Code in his Counterclaims, thereby acknowledging that he has no cognizable basis for asserting that successor liability claims brought by a seller debtor

against a buyer could constitute "legal and equitable interests of the debtor including choses in action." *Steyr*, 852 F.2d at 136.  Any grievances of a seller debtor arising from a buyer's alleged nonperformance of assumed liabilities would constitute a breach of the purchase agreement.  The Trustee has not attempted to articulate a breach of contract claim because it would fail.  As noted above, in the Definitive Agreement negotiated with, and executed by, the Debtor, the SA Defendants not only did not assume, but in fact expressly disclaimed acceptance of liability for, claims like Counterclaims I-III.

Given that § 541 can provide no statutory foundation for the Counterclaims, and based on the inclusion of § 544 in a litany of statutory references in paragraph 4 of the Counterclaims, the SA Defendants assume for the sake of argument that the Trustee relies solely upon § 544 of the Bankruptcy Code in bringing all of the Counterclaims, including the successor liability claims. AP Dkt. No. 5 ¶ 4, at 10.   However, § 544 gives the Trustee no ability to pursue the Counterclaims, and Counts I-III should be dismissed.

Section 544(b) of the Bankruptcy Code allows a trustee in bankruptcy to avoid a transfer of an interest of the debtor in property in certain circumstances. Section 544(b) states:

> (1) Except as provided in paragraph (2), the trustee may *avoid any transfer of an interest of the debtor in property* or any obligation incurred by the debtor that is *voidable under applicable law by a creditor holding an unsecured claim* that is *allowable under section 502* of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b) (emphasis added).  Subject to many limitations, § 544(b) only authorizes the Trustee to bring a suit to render a transfer of the Debtor's property void under state law and thereby recover the transferred property of the Debtor, or the value of the transferred property, from the transferee. It does not, however, authorize a trustee to bring successor liability claims seeking to hold a third party directly liable for a Debtor's obligations. A successor liability claim

is a claim asserted under state law to hold a *third party*, or a *third party's property*, directly liable for a debtor's obligations and is distinct from a transfer avoidance claim like the Trustee's claim under Virginia Code section 55-80. *See Kaiser Foundation Health Plan of Mid-Atlantic States v. Clary & Moore, P.C.*, 123 F.3d 201, 204 (4th Cir. 1997); *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co., Inc.*, 187 F.3d 439, 441 (4th Cir. 1999) (addressing an issue not directly before the Court, but recognizing that successor liability claims and fraudulent conveyance claims "do not contain identical elements [even though] they all share the same underlying focus."). In an excellent discussion on the legislative history of § 544 of the Bankruptcy Code and holding that a Chapter 7 trustee may not bring state law creditor claims under § 544 other than transfer avoidance claims, the Eighth Circuit stated as follows in *In re Ozark Restaurant Equipment Co.*:

> [T]o argue that Section 544 in its present form grants the trustee [the power to assert alter ego claims of creditors], we believe, to misconstrue the section's intended application. Although Sections 544(a) and (b) are admittedly broader than their predecessors, the substantive changes do not in any way suggest that the trustee was given the additional power to bring general causes of action on behalf of the estate's creditors. In this vein, we note that Sections 544(a) and (b) are flavored with the notion of the trustee having the power to avoid 'transfers' of the debtor, as were its predecessors, sections 70c and e of the Act. Further, it does not appear that Section 544 should be interpreted in a vacuum separate and apart from other relevant sections of the Code. As discussed by a noted author, Section 544 gives the trustee the power to avoid transfers of, or liens and encumbrances on, the debtor's property that he would be unable to challenge under other sections of the Code, such as 11 U.S.C. §§ 547 (preferences), 548 (fraudulent transfers or obligations), or 549 (post-petition transfers). An alter ego action, however, does not entail invalidating of a transfer of interest, but instead imputes the obligations of one party to another regardless of any 'transfers.'

816 F.2d 1222, 1229 (8th Cir. 1987) (citations omitted). While the Eighth Circuit's opinion in *Ozark Restaurant* directly responded to a trustee's attempt to use § 544 to assert state law alter ego claims that could have been brought by creditors, the court's broad rule, supported by the

legislative history of § 544, is directly applicable to the Trustee's attempt to assert successor

liability in this case. *See id.* at 1228 ("[W]e believe Congress' message is clear-no trustee,

whether a reorganization trustee as in *Caplin* or a liquidation trustee as in the present case, has

power under Section 544 of the Code to assert general causes of action, such as the alter ego

claim, on behalf of the bankrupt estate's creditors.").

At least one court has expressly recognized that a claim for successor liability is not a

claim available under § 544 of the Bankruptcy Code. In *Kaliner v. MDC Systems Corp., LLC*, a

chapter 7 bankruptcy trustee brought, in addition to fraudulent conveyance claims and many

other claims aimed at attacking a prepetition purchase of assets from the bankrupt debtor

corporation by an affiliated entity, successor liability claims arguing that the purchaser entity was

directly liable for the debts of the bankrupt seller. No. 2:09-MC-00005-JD, 2011 WL 203872, at

*9 (E.D. Penn. Jan. 20, 2011). The court in *Kaliner* granted summary judgment in favor of the

purchaser entity on the trustee's successor liability claims, explaining:

> A successor liability action is not an avoidance action. Whereas the
> remedy in a successor liability action is to hold the purchasing or
> receiving company liable for the selling company's debts, the goal
> of an avoidance action is to avoid the transfer of assets to the
> successor company in the first instance.

*Id.*

The current case is no different than *Kaliner.* The Trustee impermissibly attempts to

assert successor liability claims under § 544(b) to hold the SA Defendants directly liable for *all*

of the Debtor's obligations, not to avoid the transfer of any of the Debtor's property to the SA

Defendants under the Asset Purchase. The successor liability claims and remedies associated

therewith are not recognized causes of action under § 544(b).

Section 550 of the Bankruptcy Code, which the Trustee cites as a basis for effecting recovery in connection with his § 544(b) claims, has no greater utility for the Trustee.  Section 550 merely provides the Trustee with the ability to recover an "avoided" transaction from a transferee of the property. *See* 11 U.S.C. § 550. Section 550 provides that, *if successful under § 544(b)*, the Trustee can recover the transferred property or the "value" of the transferred property from various transferees. *See* 11 U.S.C. § 550(a). The plain language of § 550 augments the plain language of § 544 – claims under § 544 are clearly limited to the avoidance of a particular transfer of property, and § 550 provides the vehicle through which the trustee brings the debtor's assets back into the estate. If successor liability could be pursued under § 544 to hold a third party directly liable for the debtor's obligations, then the recovery provided under § 550 for transfers avoided under § 544 would be rendered meaningless.  As the Supreme Court has noted, this Court cannot ignore the plain language of the Code as enacted by Congress to read in a contradictory or patently inconsistent cause of action or method of recovery.  *See United States v. Ron Pair Enters., Inc*., 489 U.S. 235, 241 (1989) ("[W]here, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" (citing *Caminetti v. United States*, 242 U.S. 470, 485 (1917))).

The Trustee makes a passing request for a declaration under the DJA that the SA Defendants be held jointly and severally liable for all of the Debtor's obligations. AP Dkt. No. 5 at 20. However, the DJA, acting alone, is not a basis for standing or for creating substantive rights that the Trustee otherwise does not have. As the Fourth Circuit Court of Appeals has recognized in denying a plaintiff's claims for relief under the DJA where the plaintiff had no standing under a federal telecommunications statute:

> [The plaintiff] also asserts that it has standing under the
> Declaratory Judgments Act, 28 U.S.C. § 2201. That act, however,
> is remedial only and neither extends federal courts' jurisdiction nor
> creates any substantive rights. Stated differently, "[a] request for
> declaratory relief is barred to the same extent that the claim for
> substantive relief on which it is based would be barred." Here, [the
> plaintiff's] substantive claims fail. Accordingly, so must its
> Declaratory Judgments Act claim.

*CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 55–56 (4th Cir. 2011) (citations omitted)

(citing *Skelly Oil Co. v. Phillips Petroleum Co*., 339 U.S. 667, 671–72 (1950)). Similarly, the

Trustee attempts to use the DJA to assert substantive rights that Congress expressly did not

provide him under the Bankruptcy Code. The Trustee cannot use the DJA to convert his

impermissible successor liability claims into substantive rights against the SA Defendants.

Therefore, the Trustee's successor liability claims set forth in Counts I-III of the

Counterclaims must be dismissed.  The Trustee does not have standing to assert, and the Court

does not have subject matter jurisdiction over, those Counterclaims.

## II.     THE TRUSTEE DOES NOT HAVE STANDING AND HAS FAILED TO STATE A CLAIM FOR INTENTIONAL FRAUDULENT TRANSFER UNDER 11 U.S.C. § 544 AND VIRGINIA LAW.

The Trustee has failed to plead sufficiently a claim for relief under Counts IV and V of

the Counterclaims. Such counts should be dismissed under Bankruptcy Rules 7009(b) and

7012(b)(6).  In Counts IV and V, the Trustee asserts a very narrow fraudulent conveyance claim

against the SA Defendants pursuant to section 55-80 of the Virginia Code, relying on §§ 544(b)

and 550 of the Bankruptcy Code for standing to assert this state law claim. AP Dkt. No. 5 at 20.

Specifically, the Trustee seeks to recover from the SA Defendants the property transferred

pursuant to the Definitive Agreement, or the value thereof, based on an "actual intent" fraudulent

conveyance theory. AP Dkt. No. 5 ¶ 59, at 20.  The Trustee has failed to sufficiently plead

standing to assert his claim in Counts IV and V, and he has failed to sufficiently plead the claim itself under both § 544(b) and Virginia law. Counts IV and V should be dismissed.

    A.    <u>The Trustee Has Failed to State A Claim Under 11 U.S.C. § 544(b).</u>

As noted above, § 544(b)(1) of the Bankruptcy Code allows a trustee to avoid a transfer of an interest of the debtor "that is *voidable under applicable law* by a *creditor holding an unsecured claim that is allowable under section 502.*" 11 U.S.C. § 544(b)(1) (emphasis added). Thus, in order to assert a state law fraudulent conveyance claim under § 544(b), the Trustee must plead the existence of a qualified unsecured creditor (1) who existed at the time the transaction giving rise to the challenged transfer occurred; (2) who still holds a claim that is allowable under § 502 of the Bankruptcy Code; and (3) who, under non-bankruptcy law, could avoid the transfer, at least in part. *See Young v. Paramount Commc'ns Inc.* (*In re Wingspread Corp.*), 178 B.R. 938, 946 (Bankr. S.D.N.Y. 1995); *Kaliner v. Load Rite Trailers Inc.* (*In re Sverica Acquisition Corp., Inc.*), 179 B.R. 457, 465 (Bankr. E.D. Pa. 1995). If the Trustee cannot identify such a creditor, the Trustee lacks standing to assert his avoidance claims under state fraudulent transfer law and this Court lacks subject matter jurisdiction over such claims. *See Shearson Lehman Hutton Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991).

The Trustee's claims under § 544(b) should be dismissed because the Trustee fails to sufficiently identify a creditor with an allowed, unsecured claim who could bring such state law claims as of the Petition Date.  Indeed, the Trustee's Counterclaims were asserted well in advance of the claims deadline and without any evidence that the Trustee actually evaluated the claims that had been filed prior to asserting his Counterclaims. The absence of an identifiable creditor in the Counterclaims further underlines the speculative nature of the Trustee's claims and, at a minimum, shows that the Trustee's claims are wholly premature.

In the recitation of facts in support of his Counterclaims, the Trustee mentions two claims: 1) the claim of Downs, the petitioning creditor (Claim 1) (the "Downs Claim"), and 2) the claims of a putative class in *Dartell* (Claim 4) (collectively, the "*Dartell* Claim"). AP Dkt. No. 5 ¶¶ 32–33, at 16. There is no evidence that either claim is, or should be, allowed, much less that either the Downs or the *Dartell* Claims could be used as a basis for the Trustee's fraudulent conveyance claim in Counts IV and V.

The *Dartell* Claim, which purports to be in excess of $20 Million and serves as the primary factual basis for the Trustee's argument that the Asset Purchase was fraudulent, is facially objectionable on multiple grounds. *See* Bankr. Case, Claim 4-1. First, the *Dartell* Claim, which attaches a complaint asserting securities fraud violations against the Debtor and multiple other defendants, including Downs personally, is clearly a contingent, unliquidated and disputed claim, as disclosed in the Debtor's Schedule F (which was prepared by the Trustee's counsel in its representation of Downs as the petitioning creditor). Bankr. Dkt. No. 26 at 11. An admittedly contingent, unliquidated and disputed claim could not be further from the requisite *allowed* claim. Second, the *Dartell* Claim was filed by an attorney for a *putative class* that has not even been certified as a class in the underlying lawsuit. *See* Bankr. Case, Claim 4-1. At best, a representative of a putative class may file a proof of claim on behalf of the class in a bankruptcy on a conditional basis only. *See Gentry v. Siegel*, 668 F.3d 83 (4th Cir. 2012). The class must still seek certification by the bankruptcy court under Bankruptcy Rules 9014 and 7023 to "legitimize" the claim. *Id*. at 91. Thus, the *Dartell* Claim cannot be allowed at least until the *Dartell* class is certified by this Court and therefore cannot be a basis on which the Trustee can assert claims under § 544(b).

The Downs Claim purports to be in excess of $400,000, and is asserted by the petitioning creditor for this Bankruptcy Case.  Mr. Downs' counsel also represents the Trustee. *See* Bankr. Case, Claim 1-1. The Downs Claim also cannot serve as a basis for the Trustee's § 544(b) claims because: 1) the Downs Claim, while purporting to be a judgment, is merely a default judgment based on unpaid severance claims, and thus is facially objectionable under § 502(b)(7) of the Bankruptcy Code; 2) the Debtor likely has offsetting claims against Downs since Downs is a co-defendant with the Debtor in the lawsuit underlying the *Dartell* Claim and is alleged to be the person primarily responsible for the Debtor's fraud; and 3) prior to the Petition Date, Downs brought *and released* identical claims against the SA Defendants, and Downs seeks again to hold the SA Defendants liable for these same claims in the Downs Claim. Bankr. Case, Claim 1-1 at 6–11. Therefore, not only is the Downs Claim subject to multiple, facial objections and counterclaims, but, even if Downs has an allowable claim, Downs did not have standing as of the Petition Date to bring the claims that the Trustee seeks to assert under § 544(b), as he settled and released those claims with the SA Defendants prepetition.  The Downs Claim therefore provides no sounder basis for the Trustee to proceed under § 544(b).

The Trustee is clearly aware of the foregoing factual and legal shortcomings in the *Dartell* and Downs Claims because the Trustee's attorney has represented and continues to represent Downs in virtually every aspect of his past and present legal disputes with the Debtor and the *Dartell* claimants, and the Trustee is imputed with the knowledge of his attorneys. *See Bradford v. Denny's Inc.*, No. 97 C 1531, 1998 WL 312009, at *5 (N.D. Ill. June 4, 1998) ("Generally, notice to an attorney is notice to the client and knowledge of an attorney is knowledge of, or imputed to, the client, notwithstanding whether the attorney has actually communicated such knowledge to the client." (citations and internal quotation marks omitted)).

Since the Trustee has not pleaded the existence of a creditor with an allowed, unsecured claim, but has instead only pleaded the existence of two claims that are patently objectionable and likely to be disallowed, the Trustee has failed to establish standing to state a claim under § 544(b). For these same reasons, the Trustee has failed to state a claim under § 544(b).

      B.      <u>The Trustee Has Failed to State a Claim Under Virginia Code section 55-80.</u>

          1.      *The Trustee Does Not Meet the Pleading Standard of Bankruptcy Rules 7009 and 7012.*

Even assuming the Trustee had standing to proceed under Virginia Code section 55-80 by virtue of Bankruptcy Code § 544(b), which he does not, the Trustee's "actual intent" fraudulent conveyance claim is facially deficient. Specifically, the Trustee's claims must satisfy the heightened pleading standard for actual fraud provided in Federal Rule 9(b), made applicable to these proceedings by Bankruptcy Rule 7009. Fed. R. Bankr. P. 7009; *see also Angell v. Haveri*, 409 B.R. 346, 353 (Bankr. E.D.N.C. 2009) ("[A] claim to avoid a fraudulent transfer is sufficient if it satisfies the heightened pleading standard for actual fraud provided in Rule 9(b) of the Federal Rules of Civil Procedure[,] [which is] made applicable [to this proceeding] by Rule 7009 of the Federal Rules of Bankruptcy Procedure, . . ."). Since the Trustee's claim fails to plead the elements of an "actual intent" fraudulent conveyance under Virginia Code section 55-80, Counts IV and V of the Trustee's Counterclaims must be dismissed.

Federal Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also In re Caremerica, Inc.*, 409 B.R. at 352–53; *Angell v. C.A. Perry & Son, Inc.* (*In re Tanglewood Farms, Inc.*), No. 12-00189-8-JRL, 2013 WL 1405757, at *6 (Bankr. E.D.N.C. Apr. 4, 2013) ("A claim alleging an actual fraudulent transfer under the Bankruptcy Code . . . must meet the heightened pleadings standard of Rule 9(b)."); *Roberts v. Balasco* (*In re Ernie Haire Ford, Inc.*),

459 B.R. 824, 836–37 (Bankr. M.D. Fla. 2011) (same). To satisfy the Rule 9(b) heightened pleading standard in the context of fraudulent transfer claims, a trustee must set forth the details of the transfers alleged to be fraudulent, the reasons the transfers are fraudulent, and the roles of the SA Defendants in the transfers. *Schnelling v. Crawford* (*In re James River Coal Co.*), 360 B.R. 139, 162 (Bankr. E.D. Va. 2007).

Virginia Code section 55-80 states:

> Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, every suit commenced or decree, judgment or execution suffered or obtained and every bond or other writing given with *intent to delay, hinder or defraud creditors*, purchasers or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. *This section shall not affect the title of a purchaser for valuable consideration, unless it appears that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.*

VA. CODE ANN. § 55-80 (West 2014) (emphasis added).

Clearly, the Trustee has failed to plead sufficiently the essential elements of a claim under section 55-80 of the Virginia Code. In a suit to set aside a fraudulent conveyance based on actual intent under section 55-80, fraud may be proven not only by direct evidence, but also by circumstantial evidence. *See Fox Rest Assocs., L.P. v. Little*, 717 S.E.2d 126, 131–32 (Va. 2011) (citing *Hutcheson v. Savings Bank of Richmond*, 105 S.E. 677, 680 (Va. 1921)). "In fact, '[b]ecause of the difficulty of establishing 'actual intent,' evidence of fraud may be, and generally must be, circumstantial.'" *Id.* at 131 (quoting *Hyman v. Porter* (*In re Porter*), 37 B.R. 56, 63 (Bankr. E.D. Va. 1984)). Virginia courts permit plaintiffs to rely upon "badges of fraud," which consist of facts and circumstances that establish a prima facie case of fraudulent conveyance. Examples of "badges of fraud" are:

> (1) retention of an interest in the transferred property by the
> transferor; (2) transfer between family members for allegedly
> antecedent debt; (3) pursuit of the transferor or threat of litigation
> by his creditors at the time of the transfer; (4) lack of or gross
> inadequacy of consideration for the conveyance; (5) retention or
> possession of the property by transferor; and (6) fraudulent
> incurrence of indebtedness after the conveyance.

*Id.* at 132 (citing *In re Porter*, 37 B.R. at 63).

The Trustee fails to plead sufficient facts to demonstrate a prima facie showing of any badges of fraud. At most, the Trustee loosely attempts to show that: 1) the Debtor, as transferor, somehow retained an interest in or possession of the transferred assets because some of the directors and officers of the Debtor became employees of an SA Defendant after the Asset Purchase; and 2) the *Dartell* lawsuit, which *remains to this day* merely a contingent and unproven claim for securities violations, was brought against the Debtor in May 2013, *over a year and a half* after the Asset Purchase. *See* AP Dkt. No. 5; *see also* Bankr. Case, Claim 4-1 at 41. These are merely conclusory statements that do not even facially demonstrate circumstantial evidence of the transferor's actual intent under Virginia law.

Additionally, a plaintiff must plead that the transferee actually had notice of the transferor's fraudulent intent. *See Gold v. Sovereign Bank* (*In re Taneja*), 453 B.R. 618, 622–23 (Bankr. E.D. Va. 2011) ("[I]t seems clear that a plaintiff attacking a fraudulent conveyance under § 55–80 must always allege, as part of its cause of action, not only the debtor's fraudulent intent in making the transfer, but the transferee's notice of that intent."). The Trustee has not made any attempt to plead that the SA Defendants had notice of the transferor's fraudulent intent – assuming such intent existed.  To the contrary, the Trustee fails even to suggest that the SA Defendants are anything other than what they were: good faith purchasers for value without knowledge of any fraud on the part of the transferor.

Indeed, the Trustee's fraudulent conveyance claim appears to be little more than an afterthought of his untenable successor liability claims, warranting nothing more than a few conclusory sentences in his Counterclaims. AP Dkt. No. 5 ¶¶ 59–60, at 20. Under Count IV of the Counterclaim, the Trustee alleges that "[t]he transfers made through the Purchase Agreement were made with intent to delay, hinder or defraud creditors . . . ." [AP Dkt. No. 5 ¶ 59, at 20], but he provides nothing more in support. Count IV merely provides labels and conclusions and barely offers even a formulaic recitation of the elements of section 55-80 of the Virginia Code. Such bare pleadings are insufficient to survive a motion to dismiss for failure to state a claim upon which relief can be granted, and the Court should dismiss the Trustee's fraudulent transfer claim on this basis alone.

2.    <em>This Court Should Not Afford the Trustee a "Relaxed" Pleading Standard.</em>

Some courts have found that the particularity requirements of Federal Rule 9(b) may be relaxed in the context of fraud claims brought by a trustee in bankruptcy. *See, e.g., In re James River Coal Co.*, 360 B.R. at 163 n.15. *But see In re NE 40 Partners, Ltd. P'ship*, 440 B.R. 124, 129 (Bankr. S.D. Tex. 2010) ("[T]his Court declines to apply the relaxed pleading standards for Chapter 7 trustees asserting fraud, and instead, holds that a Chapter 7 trustee is held to the same heightened pleading standard as every other plaintiff that brings a fraud cause of action under Rule 9(b)."). This relaxed standard is justified by the courts that grant it based on a perceived lack of information available to bankruptcy trustees. *See, e.g., In re Sverica Acquisition Corp.*, 179 B.R. at 473.

Some courts have held that the "relaxed standard" promulgated by cases like *James River Coal Co.* was abrogated by the United States Supreme Court's rulings in *Aschcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *See In re Petters Co.,*

*Inc.*, 495 B.R. 887, 895–99 (Bankr. D. Minn. 2013). However, even if this Court is inclined to find that a relaxed Federal Rule 9(b) standard may still be available to the Trustee after *Iqbal* and *Twombly*, such a standard should not apply here. The Trustee has had ample opportunity to discover all facts surrounding the alleged fraudulent transaction and has retained Downs' attorneys, who are unquestionably familiar with the facts and circumstances surrounding the Asset Purchase and the events related to the *Dartell* Claim.

Downs was a "managing director" of the Debtor prior to the Asset Purchase and is a co-defendant in the *Dartell* litigation, where the putative class seeks to hold him personally liable for his material role in participating in the alleged fraud. *See* Bankr. Case, Claim 4-1. The Trustee's current counsel has defended, and continues to defend, Downs personally in the *Dartell* litigation, which was filed in May 2013. *See* Bankr. Dkt. No. 31 ¶¶ 3–4, at 7–8; *see also* Bankr. Dkt. No. 32. The Trustee is imputed to have the knowledge obtained by his counsel in the defense of Downs in the *Dartell* litigation. *See Bradford*, 1998 WL 312009, at *5. Additionally, as the attachments to the Downs Claim (filed by the Trustee's current counsel) reflect, the Trustee's current counsel also represented Downs in some capacity with respect to his prepetition legal actions against the Debtor and the SA Defendants, which resulted in the settlement with the SA Defendants of the identical claims that the Trustee now asserts in this case. *See* Bankr. Case, Claim 1-1. In fact, the language of the Trustee's Counterclaims appears to repeat verbatim Downs' Amended Statement of Claim filed against the SA Defendants in his prepetition arbitration proceedings.[5] The Trustee is imputed to have the knowledge obtained by his counsel in the prosecution of identical claims asserted by Downs against the SA Defendants

---

[5] Documents central to a plaintiff's claim may be considered when ruling on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Facts subject to judicial notice may similarly be considered in ruling on a motion to dismiss. *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013).

and settled prior to the Petition Date. *See Bradford*, 1998 WL 312009, at *5. Lastly, the Trustee's counsel represented Downs as the petitioning creditor in the Bankruptcy, taking the depositions of Donald Newlin and Milton Turner. *See* Bankr. Dkt. Nos. 15, 16, 17, 23. The Trustee should therefore have direct knowledge of the information obtained by Downs as the petitioning creditor in the Bankruptcy. *See, e.g., In re Ernie Haire Ford, Inc.*, 459 B.R. at 838 (declining to apply a relaxed Federal Rule 9(b) standard because the trustee had access to the debtor's records and had assistance from certain employees of the debtor to identify particular fraudulent transactions). Additionally, the Trustee is further imputed to have the knowledge obtained by his counsel in prosecution of the involuntary bankruptcy by Downs. *See Bradford*, 1998 WL 312009, at *5.

In sum, the Trustee's allegations against the SA Defendants fall far short of the requisite pleading standards. At best, the Trustee's allegations consist of conclusory recitals of claim theories, mere "the-defendant-unlawfully-harmed-me" accusations and formulaic recitation of elements of purported causes of action. *See Iqbal,* 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, dismissal under Federal Rule 12(b)(6) is warranted.

## CONCLUSION

The Trustee has asserted speculative Counterclaims that should be dismissed for lack of subject matter jurisdiction under Bankruptcy Rule 7012(b)(1). Moreover, even if the Court has subject matter jurisdiction, the Counterclaims should be dismissed as conclusory allegations with no demonstrated basis in law or fact and that otherwise fail to sufficiently state a claim under Bankruptcy Rules 7009(b) and 7012(b)(6). The SA Defendants respectfully move this Honorable Court to dismiss the Counterclaims.

Respectfully submitted,


**STERNE AGEE GROUP, INC. AND
STERNE, AGEE & LEACH, INC.**


 */s/ Jennifer M. McLemore*_____
Jennifer M. McLemore
One of the Attorneys for the SA Defendants

Augustus C. Epps, Jr. (VSB No. 13254)
Michael D. Mueller (VSB No. 38216)
Jennifer M. McLemore (VSB No. 47164)
CHRISTIAN & BARTON, LLP
909 East Main Street, Suite 1200
Richmond, Virginia  23219-3095
Telephone:  (804) 697-4100
Facsimile:  (804) 697-6112

and

Jayna Partain Lamar (admitted *pro hac vice*)
J. Leland Murphree (admitted *pro hac vice*)
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions Harbert Plaza
Birmingham, AL 35203
Telephone: 205-254-1000
Facsimile: 205-254-1999

*Counsel for the Plaintiffs/SA Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of January, 2015, I served a copy of the foregoing Motion to Dismiss Trustee's Counterclaims and Supporting Memorandum of Law by electronic means or by First Class U.S. Mail, postage prepaid, on all of the parties listed below.

*/s/ Jennifer M. McLemore*

Anderson & Strudwick, Incorporated
707 East Main Street, 20th Floor
Richmond, Virginia 23219

L. McCarthy Downs, III
1001 Colony Trail
Lanexa, Virginia 23089

Vern E. Inge, Jr., Esquire
LeClairRyan, A Professional Corporation
951 East Byrd Street, 8th Floor
Richmond, Virginia 23219

Bruce E. Robinson, Trustee
P.O. Box 538
415 E. Atlantic Street
South Hill, Virginia 23970-0538

Donald H. Newlin
1 Fleming Place
Fredericksburg, Virginia 22405-3301

Christian K. Vogel, Esquire
LeClairRyan, A Professional Corporation
951 East Byrd Street, 8th Floor
Richmond, Virginia 23219

Robert B. Van Arsdale
Assistant United States Trustee
Office of the U.S. Trustee
701 E. Broad Street, Suite 4304
Richmond, Virginia 23219