UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN RE: ) | |
| ) | |
| ANDERSON & STRUDWICK, ) | Case No. 14-32679-KLP |
| INCORPORATED, ) | |
| ) | Chapter 7 |
| *Debtor*. ) | |
| ) | |
| ) | |
| STERNE AGEE GROUP, INC., *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | Adv. Proc. No. 14-03175-KLP |
| ) | |
| BRUCE E. ROBINSON, TRUSTEE, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |
| ) | |
| ) | |
| BRUCE E. ROBINSON, TRUSTEE, ) | |
| ) | |
| *Counterclaim Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| STERNE AGEE GROUP, INC. ) | |
| ) | |
| and ) | |
| ) | |
| STERNE, AGEE & LEACH, INC., ) | |
| ) | |
| *Counterclaim Defendants*. ) | |
| ) | |

Vernon E. Inge, Jr. (Va. Bar No. 32699)
Christian K. Vogel (Va. Bar No. 75537)
LECLAIRRYAN, A PROFESSIONAL CORPORATION
Riverfront Plaza – East Tower, 8th Floor
951 East Byrd Street
Richmond, Virginia 23219
Telephone:         804.783.2003
Facsimile:          804.783.2294
E-Mail:             vernon.inge@leclairryan.com
                        christian.vogel@leclairryan.com

*Counsel for Defendant/Counterclaim Plaintiff, Bruce E. Robinson, Trustee*

**TRUSTEE'S RESPONSE TO MOTION TO DISMISS TRUSTEE'S
COUNTERCLAIMS AND SUPPORTING MEMORANDUM OF LAW**

Counterclaim plaintiff, Bruce E. Robinson, Trustee ("**Trustee**") for the bankruptcy estate of Anderson & Strudwick Incorporated ("**A&S**"), by counsel, states the following as his Response ("**Response**") to Motion to Dismiss Trustee's Counterclaims and Supporting Memorandum of Law (the "**Motion to Dismiss**") filed by counterclaim defendants, Sterne Agee Group, Inc. and Sterne, Agee & Leach, Inc. ("**SA Defendants**").

**Introduction**

The Motion to Dismiss seeks dismissal of all counts in the Trustee's Counterclaim against the SA Defendants (the "**Counterclaim**") on the basis that: (i) the Trustee lacks standing to assert a successor liability claim against the SA Defendants and (ii) the Trustee has failed to state a claim for intentional fraudulent transfer under section 544 of title 11 of the United States Code (the "**Bankruptcy Code**") and Virginia Code section 55-80.  Both propositions are unsupportable based upon substantial precedent, including decisions of this Court.

As to the Trustee's standing to assert successor liability claims, the Motion to Dismiss ignores not only controlling law in this Circuit, but also what has been described as the "majority view" that a "trustee in bankruptcy has standing to bring successor liability (or alter ego) suits on behalf of all creditors."  *Rosener v. Majestic Management, Inc.* (*In re OODC, LLC*), 321 B.R. 128, 136 (Bankr. D. Del. 2005) (cited by *In re Emoral, Inc.*, 740 F.3d 875, 881 (3rd Cir. 2014)).  Indeed, the Fourth Circuit Court of Appeals has adopted this "majority view" while interpreting Virginia law, identifying that successor liability claims (and alter ego claims) constitute property of the bankruptcy estate.  *See National American Ins. Co. v. Ruppert Landscaping Co., Inc.*, 187 F.3d 439 (4th Cir. 1999) (finding that creditors could not bring a successor liability claim against

2

the debtor's successor until the Trustee abandoned his or her interest in such claim or related claims); *Steyr-Daimler-Puch of America Corp. v. Pappas*, 852 F.2d 132, 136 (4th Cir. 1988) ("*under Virginia law* an alter ego claim is property of the estate under § 541(a)"). This Court has previously allowed chapter 7 trustees to pursue successor liability claims. *See In re SunSport, Inc.*, 260 B.R. 88, 104 (Bankr. E.D. Va. 2000) ("The court finds that the trustee has carried his burden of showing that successor liability should be imposed on Gilcom.")

With respect to the SA Defendants' assertion that the Trustee has failed to state a fraudulent avoidance claim under Bankruptcy Code section 544 and Virginia Code section 55-80, the multitude of facts alleged by the Trustee in the Counterclaim more than meet the *Twombly* and *Iqbal* pleadings standards and the requirements of Rule 9(b) of the Federal Rules of Civil Procedure (the "**Rules**"), which this Court has found are relaxed in the case of a fraudulent transfer, especially when the fraudulent transfer action is brought by a trustee. *Schnelling v. Crawford (In re James River Coal Co.)*, 360 B.R. at 163 n. 15 (Bankr. E.D. Va. 2007). Additionally, the Counterclaim clearly satisfies the pleading requirements under Bankruptcy Code section 544(b) by specifically identifying at least four creditors holding qualified, allowed claims and by identifying the general existence of several creditors with qualified, allowed claims. (Counterclaim, ¶ 30, 32-34). *See James River Coal*, 360 B.R. at 168 ("The Trustee is not required to name the creditor.").

## Procedural Background

L. McCarthy Downs, III initiated this underlying bankruptcy case on May 15, 2014 (the "**Petition Date**"), by filing an involuntary petition under chapter 7 of the Bankruptcy Code (ECF No. 1). The order for relief was entered on June 13, 2014 (ECF No. 6). On June 17, 2014, the

Trustee was appointed chapter 7 trustee and he continues to serve in that capacity. On December 1, 2014, the SA Defendants and The Trust Company of Sterne Agee, Inc., as Escrow Agent, filed their Complaint against the Debtor and Anderson & Strudwick Investment Corporation (the "**Complaint**") (ECF No. 35, AP ECF No. 1). On January 2, 2015, the Trustee filed his Answer of Defendant, Bruce E. Robinson, Trustee to Complaint and Counterclaims (AP ECF No. 5). The SA Defendants filed the Motion to Dismiss on January 30, 2015. (AP ECF No. 11).

### Argument

The SA Defendants request that the Trustee's Counterclaims be dismissed on the grounds that (i) a chapter 7 trustee does not have standing to assert claims for successor liability against the debtor's successor and (ii) the Trustee has failed to state a claim under Bankruptcy Code section 544 and Virginia Code section 55-80 for avoidance of the fraudulent transfer to the SA Defendants. For the following reasons, the relief requested by the SA Defendants should be denied.

**A.  The Trustee Has Standing to Bring Successor Liability Claims**

Not only does the Trustee have standing to bring the successor liability claim against the SA Defendants, he is the *only* party that has standing to bring the successor liability claim against the SA Defendants. The overwhelming majority of courts that have addressed this standing issue have concluded that bankruptcy trustees do have standing to pursue successor liability claims as they constitute property of the estate. *E.g., In re Emoral, Inc.*, 740 F.3d 875, 882 (3rd Cir. 2014) ("Plaintiff's cause of action for successor liability against [defendant] belongs to the bankruptcy estate."); *Retired Partners of Coudert Brothers Trust v. Baker & McKenzie LLP (In re Coudert Bros. LLP)*, 2012 WL 1267827, *6 (S.D.N.Y. 2012) ("If the Trust can rely on a theory of

4

successor liability to recover from the Firms, then so can every other Coudert creditor, and who recovers depends merely on who sues the Firms first. This is precisely the sort of result the Bankruptcy Code exists to forestall, by placing exclusive standing over estate claims in the bankruptcy trustee or plan administrator."); *Rosener v. Majestic Management, Inc. (In re OODC, LLC)*, 321 B.R. 128 (Bankr. D. Del. 2005); *Keene Corp. v. Coleman (In re Keene Corp.)*, 164 B.R. 844 (Bankr. S.D.N.Y. 1994) ("For the same reasons stated with respect to piercing claims, claims based upon successor liability should be asserted by the trustee on behalf of all creditors.").

In determining that successor liability claims against the purchaser of the debtors' assets constitute property of the estate, the *Emoral* Court explained that

> when examining "common claims against the debtor's alter ego or others who have misused the debtor's property in some fashion," where a claim is a "general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action."

740 F.3d at 879 (quoting *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989)). The *Emoral* Court then determined that under New Jersey and New York state law, the factual allegations necessary to establish a cause of action based on successor liability are not unique to any individual creditor of the debtor and that any recovery would benefit all creditors of the debtor. *Id.* at 880. For these reasons, the *Emoral* Court concluded that "[j]ust as the purpose behind piercing the corporate veil, however, the purpose of successor liability is to promote equity and avoid unfairness, and it is not incompatible with that purpose for a trustee, on behalf of a debtor corporation, to pursue that claim." *Id.* at 881.

As with *Emoral*, the successor liability claim against the SA Defendants is a general claim that could be brought by any creditor of the Debtor – and, in fact, at least four creditors of the Debtor, two of which are part of a potential larger class of creditors, asserted such claims against the SA Defendants prior to the Petition Date. (Counterclaim ¶ 28, 30). The analysis in *Emoral* is particularly applicable to the successor liability claim assert by the Trustee against the SA Defendants because "Virginia and New York law on successor liability is essentially the same." *Royal Alliance Assoc., Inc. v. Branch Avenue Plaza, L.P.*, 587 F.Supp.2d 729, 738 (E.D. Va. 2008). Additionally, as identified above, Fourth Circuit Court of Appeals case law interpreting Virginia law further supports that trustees have standing to bring successor liability claims against the debtor's successors. *See National American Ins. Co. v. Ruppert Landscaping Co., Inc.*, 187 F.3d 439 (4th Cir. 1999); *Steyr-Daimler-Puch of America Corp. v. Pappas*, 852 F.2d 132, 136 (4th Cir. 1988).

Because successor liability claims constitute property of the estate, "the trustee is given full authority over it." *Steyr-Daimler-Puch*, 852 F.2d at 136. Therefore, because the successor liability claim asserted by the Trustee against the SA Defendants constitutes property of the estate and the Trustee has full authority over it, he is the *only* party with standing to bring the claim. *Id*. ("Thus, before the debtor or a creditor may pursue a claim, there must be a judicial determination that the trustee in bankruptcy has abandoned the claim."); *Keene*, 164 B.R. at 852 ("If the trustee has standing to assert the claim for the benefit of the estate, no individual creditor can assert the claim unless it has been abandoned…").

The SA Defendants incorrectly rely on two cases for the proposition that the Trustee lacks standing to bring the successor liability claim, neither of which is applicable to the facts

6

currently before the Court or controlling law in this jurisdiction. In *Mixon v. Anderson (In re Ozark Restaurant Equipment Co., Inc.)*, 816 F.2d 1222 (8th Cir. 1987), the Eighth Circuit Court of Appeals determined that the chapter 7 trustee lacked standing to bring an *alter ego* action on behalf of the debtor's creditors under *Arkansas law*. *Id*. at 1225-26. In reaching its determination, the *Ozark* Court relied on the fact that the corporate entity will only be disregarded under Arkansas state law "if the corporate structure is illegally or fraudulently abused *to the detriment of a third person*." *Id.* at 1225 (emphasis in original).

In relying on *Ozark*, the SA Defendants failed to identify contrary, controlling law in the Fourth Circuit that "*under Virginia law* an alter ego claim is property of the estate under § 541(a)." *Steyr-Daimler-Puch*, 852 F.2d at 136. Additionally, the United States Bankruptcy Court for the District of Delaware further limited the applicability of *Ozark* by explaining that "the *Ozark* decision was predicated on Arkansas state law, which the Court found did not allow a corporation to bring an action to pierce the corporate veil. Further, the *Ozark* decision is by no means the majority view. In fact, most other courts have found that the trustee in bankruptcy has standing to bring successor liability (or alter ego) suits on behalf of all creditors." *Rosener v. Majestic Management, Inc.* (*In re OODC, LLC*), 321 B.R. 128, 136 (Bankr. D. Del. 2005) (internal cites omitted).

For their proposition that the Trustee lacks standing to bring the successor liability claim, the SA Defendants also rely on the one paragraph analysis in an unpublished decision from the Eastern District of Pennsylvania, which found that a "successor liability action is not an avoidance action" under Pennsylvania law. *Kaliner v. MDC Systems Corp., LLC*, 2011 WL 203872, *9 (E.D. Penn. Jan 20, 2011). The *Kaliner* decision asserts the limited conclusion that

7

"§ 544(b) does not empower Kaliner to bring claims for successor liability" based on Pennsylvania law and the decision does not address whether the successor liability claim constitutes property of the estate. *Id*. Again, the SA Defendants fail to address the limited applicability of the *Kaliner* ruling and the contrary, better reasoned case law addressing a trustee's standing under section 544(b) to bring successor liability claims. *E.g. Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339, 1342 (7th Cir. 1987) (In determining the chapter 7 trustee had standing to bring an alter ego claim, the court ruled that "the trustee represents not only the rights of the debtor but also the interests of creditors to the debtor. Pursuant to 11 U.S.C. § 544 the trustee, in his capacity as a creditor, may bring suit to reach property or choses in action belonging to the estate that will then be distributed to all creditors."); *Lumbard v. Maglia, Inc.*, 621 F.Supp. 1529, 1542 (S.D.N.Y. 1985) ("Section 544, the 'strong arm' provision, provides ample statutory authority for a Chapter 7 trustee's assertion of creditors' claims against third parties," including successor liability claims.).

    The successor liability claims brought by the Trustee against the SA Defendants are general claims that inure to the benefit of all creditors of the Debtor, and thus constitute property of the estate that only the Trustee has standing to pursue. As with other positions taken by the SA Defendants in the Motion to Dismiss, the SA Defendants' assertion that the Trustee lacks standing to bring the successor liability claims against the SA Defendants is directly contrary to the law in this Court and this Circuit and is against the clear weight of authority of all courts that have considered the issue. Therefore, the SA Defendants' request to dismiss the Trustee's successor liability claims in the Counterclaim (Counts I-III) must be denied.

8

**B. The Trustee Has Stated a Claim for Intentional Fraudulent Transfer**

As with the SA Defendants' argument that the Trustee lacks standing to bring the successor liability claims, their position that the Trustee has failed to state a claim for intentional fraudulent transfer under Bankruptcy Code section 544 and Virginia Code section 55-80 is wholly unfounded and against the clear weight of authority. The SA Defendants incorrectly assert that the Trustee has (i) failed to sufficiently identify the existence of a qualified creditor under section 544(b) and (ii) failed to plead with sufficient particularity the elements of a claim under Virginia Code section 55-80.

    1. <u>The Trustee Has Alleged the Existence of Qualified Creditors Under 544(b) with Specificity</u>

The SA Defendants' first declare that the Trustee has failed to state a claim and/or lacks standing under Bankruptcy Code section 544(b) by failing to plead the existence of a qualified creditor. Although, the Trustee specifically identifies at least four qualified creditors in the Counterclaim and generally alleges the existence of $22,040,777.05 in filed unsecured claims as of January 2, 2015 (Counterclaim ¶¶ 28-30, 32-34), he is not required to plead specific creditors to have standing or state a claim under section 544. *Schnelling v. Crawford (In re James River Coal Co.)*, 360 B.R. 139, 168 (Bankr. E.D. Va. 2007); *The Responsible Person of Musicland Holding Corp. v. Best Buy Co., Inc. (In re Musicland Holding Corp.)*, 398 B.R. 761, 778, 780 (Bankr. S.D.N.Y. 2008) ("The Court has not been able to locate a case in this district supporting the proposition that the plaintiff must name the qualifying creditor in the complaint, or suffer dismissal."); *Guiliano v. U.S. Nursing Corp. (In re Lexington Healthcare Group, Inc.)*, 339 B.R. 570, 576 (Bankr. D. Del. 2006) ("The Court agrees with the Trustee and those cases which hold that the Trustee need not identify the name of the specific creditor on which the Trustee relies.").

9

The Trustee specifically identified at least four creditors whose claims existed at the time of the fraudulent transfers and are allowable under section 502 – L. McCarthy Downs, III (Counterclaim ¶ 30, 32); Ming Yang (Counterclaim, ¶ 28, 29); Robin Joachim Dartell (Counterclaim ¶ 28, 29); Lucille R. Saunders (Counterclaim ¶ 30); and the class of creditors represented by Robin Dartell and Ming Yang (Counterclaim ¶ 28, 29).[1] The Trustee's identification of such creditors holding unsecured claims allowable under Bankruptcy Code section 502 in his Counterclaim, as well as the details of those claims, is more than sufficient to satisfy even the heightened pleading standard espoused by some courts outside the Fourth Circuit identified by the SA Defendants that indicate the general allegation of the existence of such a creditor is not sufficient. For this reason, the Trustee has sufficiently plead the existence of a creditor with a claim allowable under Bankruptcy Code section 502 and the SA defendants' motion to dismiss based on these grounds should be denied.

2. The Trustee Has Plead the Elements of a Claim Under Virginia Code section 55-80 with Specificity

The Trustee has pled all necessary elements of Virginia Code section 55-80 with sufficient particularity to satisfy the heightened standard of Rule 9(b) of the Federal Rules of Civil Procedure, particularly based on the fact that the Trustee is entitled to a relaxed standard in the context of fraud claims. *See James River Coal,* 360 B.R. at 163, n.15 ("It is disingenuous for the defendants to attempt to shield themselves from liability based upon the allegation that the Trustee has failed to plead with sufficient particularity where, as here, the defendants possess

---

[1] Pursuant to 11 U.S.C. § 502(a), a claim, proof of which is filed under section 501, is deemed allowed unless a party in interest objects to such claim. The SA Defendants spend significant time arguing the merits of the claim identified by the Trustee, but the fact is that all claims identified by the Trustee are allowed claims as defined in section 502 and for purposes of a motion to dismiss are deemed to be true. Any dispute that the SA Defendants have to the claims for which the Trustee has standing under section 544(b), is a factual dispute to be determined at trial.

knowledge regarding the subject transactions and the Trustee has limited access to such information without discovery.").[2]

As identified by the SA Defendants (Motion to Dismiss p. 20), fraud for purposes of section 55-80 may be proven by circumstantial evidence and "because of the difficulty of establishing 'actual intent,' evidence of fraud may be, and generally must be, circumstantial." *Hyman v. Porter (In re Porter)*, 37 B.R. 56, 63 (Bankr. E.D. Va. 1984), quoted by *Fox Rest Assocs., L.P. v. Little*, 282 Va. 277, 284, 717 S.E.2d 126, 131 (2011). Therefore, Virginia courts rely on the badges of fraud to establish a *prima facie* case of fraudulent conveyance. The badges of fraud include:

> (1) retention of an interest in the transferred property by the transferor; (2) transfer between family members for allegedly antecedent debt; (3) pursuit of the transferor or threat of litigation by his creditors at the time of the transfer; (4) lack of or gross inadequacy of consideration for the conveyance, (5) retention or possession of the property by the transferor; and (6) fraudulent incurrence of indebtedness after the conveyance.

*Id.* "A prima facia case is established by demonstrating *a* badge of fraud." *Id*. (emphasis added). Additionally, "insolvency taken together with other circumstances may show sufficiently fraudulent intent." *Id.* "Fraud should be inferred when the facts and circumstances are such as would lead a reasonable man to the conclusion that a debtor has attempted to withdraw his property from the reach of his creditors with the intent to prevent them from recovering their just debts." *Id*.

---

[2] It is telling that the SA Defendants have filed a motion for a protective order in this case in an effort to avoid responding to the Trustee's discovery requests that go to the heart of the specifics of his claim under Virginia Code section 55-80 (AP ECF No. 14).

11

Therefore, the Trustee only had to plead a single badge of fraud to establish his *prima facia* case against the SA Defendants. The SA Defendants themselves concede in the Motion to Dismiss that the Trustee has pled at least two badges of fraud. (Motion to Dismiss, p. 21). First, the shareholders of the Debtor retained an interest in the transferred assets by (i) receiving a portion of the purchase price directly from the SA Defendants disguised as retention bonuses or loan repayments (Counterclaim ¶ 21), (ii) having loans owed to the Debtor by the officers and directors forgiven or transferred to the SA Defendants (Counterclaim ¶ 22), and (iii) obtaining employment with the SA Defendants (Counterclaim ¶¶ 10, 11, 13-15). The Trustee also alleges that the Debtor also retained an interest in the transferred assets by receiving a portion of the purchase price as stock in Sterne Agee Group, Inc. (Counterclaim ¶¶ 20, 23).

The Trustee alleges a second badge of fraud by asserting that the Debtor faced the threat of litigation by its creditors at the time of the transfer, including the members of the Dartell/Ming class, whose losses were sustained in early 2011. (Counterclaim ¶¶ 28-29).

In addition to the badges of fraud that the SA Defendants concede the Trustee alleges in the Counterclaim, the Trustee also alleges that the Debtor was left insolvent after it transferred its assets to the SA Defendants because it had no remaining assets with which to pay its significant liabilities. (Counterclaim ¶ 7). Additionally, the Trustee alleges that the Debtor's officers, directors, and shareholders entered into the transaction with the SA Defendants "with the goal of separating A&S's assets from its significant liabilities for the benefit of Sterne Agee and A&S's and ASIC's principals/shareholders," which allegation is clearly supported by the timing of the transaction, the escrow fund set up through the transaction, and the conflicts of interest of the decision makers who designed the transaction in their best interests, among other facts

12

surrounding the transaction alleged in the Counterclaim. (Counterclaim ¶ 7). The Trustee has sufficiently alleged at least two badges of fraud establishing the fraudulent intent necessary under Virginia Code section 55-80, along with other relevant facts recognized as instructive by Virginia Courts.

The SA Defendants further erroneously argue that the Trustee has failed to plead that the SA Defendants had notice of the Debtor's fraudulent intent in transferring its assets to the SA Defendants. This argument carries little weight in the face of the Trustee's allegations that "Sterne Agee and the principals/shareholders of A&S and ASIC completed a transaction at the end of 2011 with the goal of separating A&S's assets from its significant liabilities for the benefit of Sterne Agee and A&S's and ASIC's principals/shareholders." (Counterclaim ¶ 7). The Trustee further alleges facts in support of his position that the SA Defendants had notice of the Debtor's fraudulent intent, and, in fact, knowingly participated in the fraudulent transfer by (i) disguising payment of a portion of the purchase price directly to shareholders as retention bonuses (Counterclaim ¶ 21); (2) keeping one of their employees and office managers, Donald Newlin, in place as a director of the Debtor for over three years following the transaction (Counterclaim, ¶ 16); and (iii) setting up an escrow fund with a portion of the purchase price, conveniently in the form of SA Defendants' stock, to cover claims for successor liability against the SA Defendants (Counterclaim ¶ 23), among others.

Additionally, any fraudulent intent of the Debtor and the knowledge thereof is imputed to the SA Defendants because, as alleged by the Trustee in the Counterclaim (Counterclaim ¶ 14), the Debtor's president and CEO, Damon Joyner, who negotiated and oversaw the fraudulent transfer of assets to the SA Defendants became the SA Defendants' Senior Managing Director as

part of the transaction. *Chesapeake & O. Ry. Co. v. Williams Slate Co.*, 143 Va. 722, 736, 129 S.E. 499, 503 (1925) ("There is no other way of bringing knowledge to a corporation except through its officers and agents; and knowledge acquired by such officers or agents in transactions affecting their business employment must be regarded as actual knowledge to the corporation."). Therefore, knowledge of the Debtor's fraudulent intent in entering into the transaction with the SA Defendants is imputed to the SA Defendants through their Senior Managing Director, who negotiated the transaction on the Debtor's behalf as the Debtor's president and CEO.

Finally, Virginia law provides that allegations that a transfer was made with intent to hinder, delay, and defraud creditors (Counterclaim ¶ 7, 59), necessarily implies notice of such fraudulent intent to the grantee. *Flook v. Armentrout's Adm'r,* 100 Va. 638, 42 S.E. 686, 688 (1902) ("This court has held that the privity of the grantee in the fraud of his grantor is sufficiently alleged by charging that the deed was made, not only without any consideration deemed valuable in law, but with intent to hinder, delay, and defraud the creditors of the grantor. Whilst it is clearly the better practice to charge, in terms, that the grantee had notice of the grantor's fraudulent intent, yet if the charge made necessarily implies such notice, as it does in the case at bar, it is sufficient.")

The specific allegations asserted by the Trustee in the Counterclaim detailed above not only satisfy the *Twombly* and *Iqbal* pleading standards for stating a claim under Bankruptcy Code section 544(b) and Virginia Code section 55-80, but they also more than satisfy the heightened pleadings standard of Rule 9(b). As this Court has explained, "[i]f a fraudulent transfer claim details the transfers alleged to be fraudulent, the reasons the transfers are fraudulent, and the roles of the defendants in the transfers, it has been pled with sufficient

14

particularity to satisfy Federal Rule of Civil Procedure 9(b)." *Schnelling v. Crawford (In re James River Coal Co.)*, 360 B.R. 139, 162 (Bankr. E.D. Va. 2007). The Counterclaim details that the Definitive Agreement dated November 15, 2011, and related documents and transfers constitute the transfers alleged to be fraudulent. As discussed above, the Counterclaim identifies the reasons the transfers are fraudulent – they were done with intent to hinder, delay and defraud creditors and the specified badges of fraud support such intent. Finally, the SA Defendants actively participated in the fraudulent transfer and were certainly on notice of same, based on the facts surrounding the transaction discussed above.

Even though the Counterclaim meets the heightened pleadings standard of Rule 9(b), the Trustee is entitled to a relaxed standard in pleading his fraudulent transfer claim under Bankruptcy Code section 544 and Virginia Code section 55-80. *See James River Coal,* 360 B.R. at 163, n.15. Based on this relaxed standard, there can be no question that the Trustee has sufficiently pled the fraudulent transfer claim.

The SA Defendants argue that the Trustee is not entitled to a relaxed standard under Rule 9(b) for purposes of his fraudulent transfer claims because (1) *Twombly* and *Iqbal* abrogated the relaxed standard and (2) the Trustee had time to investigate and benefited from his counsel's background knowledge. As is pervasive throughout the Motion to Dismiss, the SA Defendants incorrectly rely on *In re Petters Co., Inc.*, 495 B.R. 887 (Bankr. D. Minn. 2013), for the proposition that this Court's relaxed standard under Rule 9(b) for fraudulent transfers, especially when brought by a trustee, was somehow abrogated by *Twombly* or *Iqbal*. Nowhere does the *Petters* Court suggest that the relaxed 9(b) standard was abrogated by *Twombly* or *Iqbal*. In fact, *Twombly* made clear that "[i]n reaching this conclusion, we do not apply any 'heightened'

15

pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9…" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 568 n.14 (2006).

The SA Defendants further suggest that the Trustee is somehow not entitled to a relaxed pleading standard under Rule 9(b) because he engaged counsel who represented the petitioning creditor in the involuntary bankruptcy filing against the Debtor and therefore, somehow, had some prior knowledge of the fraudulent transfer.[3] First, counsel for the Trustee **did not** represent the petitioning creditor in connection with his pre-petition suit with the SA Defendants as alleged in the Motion to Dismiss. Secondly, the petitioning creditor was not an officer or director or even an employee of the Debtor at the time the fraudulent transfer occurred. Third, even though counsel for the Trustee deposed Mr. Newlin and Mr. Turner in connection with the Debtor's bankruptcy prior to being engaged by the Trustee, such meeting was for purposes of completing the Debtor's schedules and counsel for the Trustee was not provided information on potential successor liability claims against the SA Defendants. The Trustee should not be penalized for the SA Defendants' misguided understanding as to what information the Trustee or his counsel had access to prior to filing the Counterclaim. Therefore, despite the fact that the Trustee has fully satisfied the requirements of Rule 9(b) in the Counterclaim, he is still entitled to the relaxed standard applied to trustees bringing fraudulent transfer actions.

---

[3] The SA Defendants inappropriately allege new, and in some instances inaccurate, facts not included in the Counterclaim throughout their Motion to Dismiss. This is particularly prevalent where the SA Defendants argue that the Trustee is not entitled to a relaxed Rule 9(b) standard with respect to his fraudulent transfer claims due to his alleged prior knowledge of the fraud (Motion to Dismiss, 23-24). The Fourth Circuit has established that "as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage…" *American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). Additionally, in ruling on the Motion to Dismiss, the Court is required to "accept as true all of the factual allegations contained in the complaint" and "draw all reasonable inferences in favor of the plaintiff." *E.I du Pont e Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 440 (4th Cir. 2010). Therefore, all extrinsic evidence included in the Motion to Dismiss, including any allegations by the SA Defendants of the Trustee's or his counsel's prior knowledge of the facts of this case, cannot be considering in ruling on the Motion to Dismiss.

**Conclusion**

The Motion to Dismiss contains many inaccurate factual statements and inaccurate, or at least not full, statements of the law. Successor liability claims constitute property of the estate that there is no question the Trustee has standing to bring. In fact, the Trustee is the only party that may bring these actions unless and until he abandons the claims. Secondly, the Trustee has sufficiently identified specific qualified creditors under Bankruptcy Code section 544(b) for purposes of the fraudulent transfer claim, despite the fact that this Court only requires that the general existence of such creditors be alleged in a fraudulent transfer claim. Finally, the Trustee has met his burden under Rules 8 and 9 of the Federal Rules of Civil Procedure with respect to the fraudulent transfer claim, especially considering the relaxed standard applicable to the Trustee.

WHEREFORE, the Trustee, by counsel, requests that the Court deny the relief requested by the SA Defendants in their Motion to Dismiss, grant the Trustee such other and further relief as may be just under the circumstances, and in the unlikely event the Court deems it necessary, grant the Trustee leave to amend the Counterclaim.

               BRUCE E. ROBINSON, TRUSTEE

               /s/ Christian K. Vogel
               Counsel

Vernon E. Inge, Jr. (Va. Bar No. 32699)
Christian K. Vogel (Va. Bar No. 75537)
LECLAIRRYAN, A PROFESSIONAL CORPORATION
Riverfront Plaza – East Tower, 8th Floor
951 East Byrd Street
Richmond, Virginia 23219
Telephone:    804.783.2003
Facsimile:    804.783.2294
E-Mail:       vernon.inge@leclairryan.com
              christian.vogel@leclairryan.com

*Counsel for Defendant and Counterclaim Plaintiff,*
*Bruce E. Robinson, Trustee*

# CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of March, 2015, a true and correct copy of the foregoing Trustee's Response to Motion to Dismiss Trustee's Counterclaims and Supporting Memorandum of Law was served via electronic delivery and/or first-class mail, postage prepaid, upon the following:

> Augustus C. Epps, Jr.
> Michael D. Mueller
> Jennifer M. McLemore
> CHRISTIAN & BARTON, LLP
> 909 East Main Street, Suite 1200
> Richmond, Virginia 23219
>
> Jayna Partain Lamar
> J. LeLand Murphree
> MAYNARD, COOPER & GALE, P.C.
> 2400 Regions Harbert Plaza
> 1901 Sixth Avenue North
> Birmingham, Alabama 35203

*Counsel for Plaintiffs and Counterclaim Defendants*

                                                /s/ Christian K. Vogel
                                                Counsel