UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ANDERSON & STRUDWICK, | ) | Case No. 14-32679-KLP |
| INCORPORATED, | ) | |
| *Debtor.* | ) | Chapter 7 |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| STERNE AGEE GROUP, INC., *et al.*, | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 14-03175-KLP |
| | ) | |
| BRUCE E. ROBINSON, TRUSTEE, *et al.*, | ) | |
| *Defendants.* | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| BRUCE E. ROBINSON, TRUSTEE, | ) | |
| *Counterclaim Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STERNE AGEE GROUP, INC. | ) | |
| and STERNE, AGEE & LEACH, INC., | ) | |
| *Counterclaim Defendants.* | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

## <u>**MEMORANDUM OPINION**</u>

Before the Court is the motion to dismiss (the "<u>**Motion**</u>") filed by the

Counterclaim Defendants, Sterne Agee Group, Inc. and Sterne, Agee &

Leach, Inc. (together, "<u>**Sterne Agee**</u>"), seeking dismissal of counterclaims

(the "<u>**Counterclaim**</u>") filed by Bruce E. Robinson, Trustee (the "<u>**Trustee**</u>")

for the bankruptcy estate of Anderson & Strudwick, Incorporated (the

"<u>**Debtor**</u>" or "A&S"), in response to the complaint filed by Sterne Agee and

The Trust Company of Sterne Agee, Inc., as Escrow Agent, against the

Trustee and Anderson & Strudwick Investment Corporation (the

"**Complaint**").  Sterne Agee filed the Motion on January 30, 2015.  The

Trustee filed his response to the Motion on March 4, 2015.  A hearing was

conducted on the Motion on March 11, 2015.  Sterne Agee asserts that the

Counterclaim should be dismissed pursuant to Rule 12 of the Federal Rules

of Civil Procedure, Fed. R. Civ. P. 12, as made applicable here by Rule 7012 of

the Federal Rules of Bankruptcy Procedure, Fed. R. Bankr. P. 7012, on the

basis that: (i) the Trustee lacks standing to assert a successor liability claim

against Sterne Agee and (ii) the Trustee has failed to state a claim for

fraudulent transfer under § 544 of Title 11 of the United States Code (the

"**Bankruptcy Code**") and Virginia Code § 55-80.  For the reasons set forth

below, the Court will deny the Motion.

## Procedural Background

On May 15, 2014, an involuntary petition under chapter 7 of the

Bankruptcy Code was filed against the Debtor.  On June 13, 2014, an order

for relief was entered against the Debtor under chapter 7 of the Bankruptcy

Code (the "**Order for Relief**"), and the Trustee was appointed chapter 7

trustee in the case.  On December 1, 2014, Sterne Agee and The Trust

Company of Sterne Agee, Inc., as Escrow Agent, filed the Complaint against

the Debtor and its parent holding company, Anderson & Strudwick

Investment Corporation ("**ASIC**").  The Trustee filed his answer and the

Counterclaim against Sterne Agee on January 2, 2015.

The Complaint seeks entry of a declaratory judgment that Sterne Agee

has certain rights to funds held in escrow in which Sterne Agee alleges that

the Trustee and the bankruptcy estate have only a contingent, residual

interest.  The Court finds that it has subject matter jurisdiction over this

adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general

order of reference from the United States District Court for the Eastern

District of Virginia dated August 15, 1984.  This is a core proceeding under

28 U.S.C. § 157(b)(2)(B), (C), (H), and (O).  Venue is appropriate in this Court

pursuant to 28 U.S.C. §§ 1408 and 1409.

## Factual Allegations and Positions of the Parties

The Trustee brought this Counterclaim "to hold Sterne Agee liable for

the debts of A&S as reflected in the proofs of claim filed in A&S's bankruptcy

case, or, in the alternative, avoid the transaction entered into by Sterne Agee,

A&S and ASIC as being fraudulent."  (Counterclaim ¶ 7).

### Factual allegations of the Counterclaim

*The following allegations are asserted in the Counterclaim:*  By

agreement dated November 15, 2011 (the "**Purchase Agreement**"), Sterne

Agee purchased the majority, if not all, of the assets of the Debtor and ASIC

and assumed all beneficial liabilities.  (Counterclaim ¶ 8).  Pursuant to the

Purchase Agreement, the Debtor granted Sterne Agee the right to hire its

employees in Sterne Agee's sole discretion and to transfer those employees' "assets under management" to Sterne Agee.  (Counterclaim ¶ 10).

As part of the transaction, all but one of the directors of the Debtor and ASIC, which constituted the large majority of the Debtor's and its parent company's shareholders, were offered employment with Sterne Agee and accepted those positions.  (Counterclaim ¶ 11).  The one director of the Debtor and ASIC that did not become an employee of Sterne Agee, Milton Turner, was not previously employed by the Debtor.  (Counterclaim ¶ 11).  The majority of the Debtor's and ASIC's shareholders are now owners and employees of Sterne Agee.  (Counterclaim ¶ 12).  All of the Debtor's branch office managers became branch office managers of Sterne Agee at its Charlotte, North Carolina; Columbia and Mt. Pleasant, South Carolina; Knoxville, Tennessee; and Fredericksburg, Norfolk, and Richmond, Virginia locations.  (Counterclaim ¶ 13).  Branch office manager is an officer position at Sterne Agee.  (Counterclaim ¶ 13).  Damon Joyner, the Debtor's president and CEO at the time of the transaction, became senior managing director with Sterne Agee.  (Counterclaim ¶ 14).  Sterne Agee also acquired the majority of the Debtor's sales force and assets under management. (Counterclaim ¶¶ 10, 15).  Even at the time of the entry of the Order for Relief, Donald Newlin concurrently served as Sterne Agee's branch office manager of its Fredericksburg, Virginia office and as a director of the Debtor and ASIC.  (Counterclaim ¶ 16).

Through the Purchase Agreement, Sterne Agee purchased all of the Debtor's assets necessary to operate and continue the Debtor's business, as determined by Sterne Agee, including all equipment, furniture, fixtures, and other tangible assets. (Counterclaim ¶ 17). The trustee also alleges that had the principals and shareholders of A&S and ASIC not transferred all valuable assets of A&S to Sterne Agee, all assets of A&S, including outstanding loans owed to A&S or ASIC by the principals and employees of A&S, would have been subject to creditor process. (Counterclaim ¶ 36). Sterne Agee only assumed the liabilities of the Debtor necessary for the continued operation of the Debtor's business, including the Debtor's leases for multiple office locations and any contract or agreements determined by Sterne Agee to be necessary. (Counterclaim ¶ 18).

A portion of the purchase price under the Purchase Agreement was paid with shares of Sterne Agee. (Counterclaim ¶ 20). Additionally, the total amount of the purchase price was reduced by the amount of "retention incentives," up to $1.4 million, paid by Sterne Agee to the employees of the Debtor that it wanted to retain, many, if not all, of which held ownership interests in the Debtor or its holding company. (Counterclaim ¶ 21). A portion of the purchase price also went to pay off a large loan owed to an affiliate of a director of the Debtor's holding company, Milton Turner, at the direction of the Debtor's and its holding company's board, which were composed of employees of Sterne Agee. (Counterclaim ¶ 22). The Purchase

Agreement further provided that $1 million of the purchase price, in the form
of shares of Sterne Agee, was to be held pursuant to the terms of the
Purchase Agreement and a related escrow agreement to pay Sterne Agee's
obligations as successor to the Debtor.  (Counterclaim ¶ 23).  Press releases
by Sterne Agee in October and December 2011, identified that Sterne Agee
was acquiring the Debtor and that the Debtor's customers would not see any
changes with their current experience with the Debtor.  (Counterclaim ¶¶ 24,
25).

Sterne Agee excluded from the Purchase Agreement all liabilities of
the Debtor and ASIC that were not necessary for the continued operation of
the Debtor's business.  (Counterclaim ¶ 19).  Following the transaction with
Sterne Agee, the Debtor was left with no remaining assets with which to
operate its business or pay its remaining liabilities and, therefore, ceased
operations.  (Counterclaim ¶ 27).

On May 1, 2013, Ming Yang and Robin Joachim Dartell, individually
and on behalf of all others similarly situated, filed their Consolidated
Amended Class Action Complaint (the "**Class Action Complaint**") seeking
damages related to the initial public offering of Tibet Pharmaceuticals, Inc.
("**Tibet**").  (Counterclaim ¶ 28).  The Class Action Complaint alleges that on
January 24, 2011, the Debtor served as the underwriter of Tibet's initial
public offering and sold $16.5 million of Tibet's stock to investors by means of
a misleading initial public offering prospectus that misrepresented Tibet as a

financially sound and profitable company when Tibet had defaulted on a $4.54 million loan secured by Tibet's operating assets. (Counterclaim ¶ 29a). It further alleges that on September 10, 2010, a Chinese court entered judgment against Tibet for $4.54 million and that on January 10, 2011, two weeks prior to the IPO and eleven months before the Purchase Agreement, the Chinese court entered an order permitting a bank to seize all of Tibet's operating assets. (Counterclaim ¶ 29b). The Class Action Complaint alleges that when the Debtor sold $16.5 million of Tibet's stock to investors, Tibet had lost its entire business. (Counterclaim ¶ 29c). The Class Action Complaint further alleges that the Debtor sold investors stock in a defunct company whose assets were being seized by a bank and which was on the verge of bankruptcy, (Counterclaim ¶29c), that the value of Tibet dropped to zero and investors suffered a complete loss (Counterclaim 29d), and that Sterne Agee is liable for the acts of the Debtor as successor-in-interest. (Counterclaim ¶ 29e). In addition to the Class Action Complaint, three other suits have been filed against Sterne Agee as successor to the Debtor: *Downs v. Anderson & Strudwick, et al.* (FINRA Dispute Resolution No. 12-00842); *Koth v. Anderson & Strudwick, Inc., et al.* (FINRA Arbitration No. 13-02214); *Saunders v. Sterne, Agee & Leach, Inc., et al.* (FINRA Arbitration No. 13-03335). (Counterclaim ¶ 30).

On October 21, 2014, L. McCarthy Downs, III filed proof of claim number 1 in the Debtor's bankruptcy case in the amount of $413,676.25.

(Counterclaim ¶ 32).  The putative class in the Class Action lawsuit[1] filed

proof of claim number 4 in the Debtor's case in the amount of $21,591,945.21

on December 9, 2014.  (Counterclaim ¶ 33).  As of January 2, 2015, unsecured

claims totaling $22,040,777.05 have been filed in the Debtor's case.

(Counterclaim ¶ 34).

The Trustee alleges that Sterne Agee and the principals of the Debtor

and ASIC entered into the Purchase Agreement with the intention of

transferring all assets of the Debtor away from its creditors (Counterclaim ¶

35) and that the Debtor's shareholders and Sterne Agee retained all the value

in the Debtor while avoiding its liabilities.  (Counterclaim ¶ 55).[2]

<u>Positions of the parties</u>

The Trustee asserts that Sterne Agee is liable for all obligations of the

Debtor by virtue of expressly or impliedly assuming all of the Debtor's

liabilities, completing a de facto merger with the Debtor, and being the mere

---

[1] The Class Action lawsuit is the lawsuit in which the Class Action Complaint was filed.

[2] The Counterclaim alleges that:

> Sterne Agee and the principals/shareholders of A&S and ASIC completed a transaction at the end of 2011 with the goal of separating A&S's assets from its significant liabilities for the benefit of Sterne Agee and A&S's and ASIC's principals/shareholders.  Through the transaction, Sterne Agee gained A&S's offices, brokers, and substantial assets under management, among other assets, while refusing to pay the large majority of A&S's obligations.  A&S's principals received positions with Stern Agee, payments disguised as retention bonuses, ownership interests in Sterne Agee, and the assumption by Sterne Agee of loans owed by the principals to A&S or ASIC that otherwise would have been subject to creditor process.  The only parties in interest that did not benefit from the Sterne Agee transaction were the creditors of A&S, as A&S had minimal, if any, assets remaining following the Sterne Agee transaction.  The creditors of A&S were substantially harmed by the transaction with Sterne Agee, which was designed to avoid payment to the creditors while transferring all of the value to the partners and Sterne Agee.

(Counterclaim ¶ 7).

continuation of the Debtor.  (Counterclaim ¶ 41-57).  The Trustee further

asserts that the transfers from the Debtor to Sterne Agee are avoidable

fraudulent transfers pursuant to Bankruptcy Code § 544(b), 11 U.S.C.

§544(b), and Virginia Code § 55-80, Va. Code Ann. § 55-80.  (Counterclaim ¶¶

58-62).

Sterne Agee seeks dismissal of the successor liability claims asserted

by the Trustee (Counts I – III) pursuant to Rule 12(b)(1) of the Federal Rules

of Civil Procedure (the "**Rules**") on the grounds that the Trustee does not

have standing to pursue successor liability claims against Sterne Agee and,

therefore, this Court lacks subject-matter jurisdiction to hear the claims.

Sterne Agee seeks dismissal of the fraudulent transfer claims asserted by the

Trustee (Counts IV & V) pursuant to Rule 12(b)(6) on the grounds that the

Trustee lacks standing to assert and has failed to sufficiently plead a

fraudulent transfer claim pursuant to Bankruptcy Code § 544 and Virginia

Code § 55-80.

### Conclusions of Law

Standard of review

Rule 12(b)(1), made applicable to this adversary proceeding by

Bankruptcy Rule 7012(b), provides that a party may assert as a defense that

the court lacks subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1); Fed. R.

Bankr. P. 7012(b).  "When a defendant makes a facial challenge to subject

matter jurisdiction, 'the plaintiff, in effect, is afforded the same procedural

protection as he would receive under a Rule 12(b)(6) consideration.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting <u>*Adams v. Bain*</u>, 697 F.2d 1213, 1219 (4th Cir. 1982)). "In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." 585 F.3d at 192.

Rule 12(b)(6) provides that in its responsive pleading, a party may assert a defense that the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b). A complaint fails to state a claim upon which relief can be granted when it fails to satisfy the requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 8(a)(2), made applicable here by Bankruptcy Rule 7008, Fed. R. Bankr. P. 7008, which requires the pleader to state "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. The purpose behind Rule 8 is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550

U.S. at 556).

Successor liability counts

In Counts I, II and III of the Counterclaim, the Trustee seeks to hold

Sterne Agee liable for the debts of the Debtor under the theory that Sterne

Agee is the Debtor's successor.  Sterne Agee contends that the Court lacks

subject matter jurisdiction to rule on the Trustee's successor liability claims

because the Trustee has no standing to assert the successor liability claims.

Sterne Agee argues that the successor liability claims do not belong to the

bankruptcy estate and that § 544 of the Bankruptcy Code does not provide a

basis for the Trustee to assert such claims.

Section 541(a)(1) of the Bankruptcy Code provides that the bankruptcy

estate includes all legal or equitable interests of the debtor in property at the

commencement of the case.  This includes causes of action.  *Bd. of Trustees of*

*Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 169 n.5

(3d Cir. 2002) (citing *Butner v. United States*, 440 U.S. 48, 54 (1979)).  Section

704(a)(1) of the Bankruptcy Code requires a trustee in a chapter 7 case to

"collect and reduce to money the property of the estate."  11 U.S.C.

§ 704(a)(1).  The Trustee therefore seeks to pursue and administer the

successor liability claim as an asset of the estate.  Sterne Agee urges that the

Trustee may not pursue a successor liability claim because Virginia law does

not permit a corporation to pursue successor liability claims against the

purchaser of its assets.  Thus, Sterne Agee asserts that the successor liability

claim was not an asset of the Debtor at the time the bankruptcy petition was

filed.

Virginia does recognize a cause of action for successor liability.  In

*Fuisz v. Lynch, AIA, PLLC*, 147 F. App'x 319 (4th Cir. 2005), the Fourth

Circuit summarized Virginia law on successor liability:

> In Virginia, a corporation that "purchases or otherwise receives
> the assets of another company is generally not liable for the
> debts and liabilities" of the predecessor. *Kaiser Found. Health
> Plan of the Mid-Atl. States v. Clary & Moore, P.C.,* 123 F.3d 201,
> 204 (4th Cir.1997) (applying Virginia law). The Supreme Court
> of Virginia has enumerated four limited situations, however,
> where a successor corporation may be so liable. Those exceptions
> arise: (1) when the successor corporation has expressly or
> impliedly agreed to assume the liabilities of its predecessor; (2)
> when the circumstances warrant a finding that a consolidation
> or de facto merger of the two corporations occurred; (3) when the
> successor corporation is merely a continuation of its predecessor
> (the "mere continuation exception"); or (4) when the disputed
> transaction is fraudulent in fact. *Harris v. T.I., Inc.* 243 Va. 63,
> 413 S.E.2d 605, 609 (1992).

147 F. App'x 319, 321.  *See also Huennekens v. Gilcom Corp. of Va. (In re*

*SunSport, Inc.)*, 260 B.R. 88, 104 (Bankr. E.D. Va. 2000); *Harris v. T.I., Inc.*

243 Va. 63, 70, 413 S.E.2d 605, 609 (1992).  Sterne Agee argues that because

there is no case law in Virginia allowing a corporation to recover against its

alleged successor entity, the claim is impermissible. The Court disagrees.

After examining the law in the Fourth Circuit concerning recovery by a

trustee on behalf of a corporate debtor under alter ego theories, as well as the

law in other jurisdictions concerning trustee recovery under successor

liability theories, the Court concludes that the Trustee may seek recovery in this case against Sterne Agee as successor entities.

In *Steyr-Daimler-Puch of America Corp. v. Pappas*, 852 F.2d. 132, 135-36 (4th Cir. 1988), the Fourth Circuit determined that if, under state law, an alter ego claim may be brought by a corporation, that claim is a right of the debtor that passes into the bankruptcy estate and to the trustee. Although there appears to be no Virginia case specifically stating that a corporate entity may pursue a successor liability claim against its alleged successor in interest, there is also no case that prohibits such an application of the successor liability theory.  The Court finds that because the successor liability claim the Trustee is asserting is not specific as to any one creditor and because any recovery would inure to the benefit of all creditors, the Trustee's successor liability claim should be permitted for the same reasons the Fourth Circuit allowed the alter ego claim in *Steyr*.  Thus, following the Fourth Circuit's analysis in *Steyr*, the Court finds that the Trustee may assert successor liability claims for the benefit of the bankruptcy estate.[3]

The weight of authority outside of this Circuit supports the conclusion that a successor liability claim constitutes property of the bankruptcy estate under Bankruptcy Code § 541(a)(1), which a trustee has standing to pursue on behalf of all creditors.  *See, e.g., In re Emoral, Inc.*, 740 F.3d 875, 882 (3d Cir. 2014), *cert. denied* 135 S. Ct. 436 (2014) ("Plaintiff's cause of action for

---

[3] The Court also notes this Court's decision in *Huennekens v. Gilcom Corp. of Va. (In re SunSport, Inc.)*, 260 B.R. 88 (Bankr. E.D. Va. 2000) (permitting the trustee to pursue successor liability claims against the transferee of the debtor's assets).

successor liability . . . belongs to the bankruptcy estate.");  *Retired Partners of Coudert Brothers Trust v. Baker & McKenzie LLP (In re Coudert Bros. LLP)*, Adv. Pro. No. 08-1472, 2012 WL 1267827, at *6 (S.D.N.Y. April 12, 2012) ("If the Trust can rely on a theory of successor liability to recover from the Firms, then so can every other Coudert creditor, and who recovers depends merely on who sues the Firms first.  This is precisely the sort of result the Bankruptcy Code exists to forestall, by placing exclusive standing over estate claims in the bankruptcy trustee or plan administrator.");  *Rosener v. Majestic Management, Inc. (In re OODC, LLC)*, 321 B.R. 128, 136 (Bankr. D. Del. 2005) ("[M]ost other courts have found that the trustee in bankruptcy has standing to bring successor liability (or alter ego) suits on behalf of all creditors.");  *Keene Corp. v. Coleman (In re Keene Corp.)*, 164 B.R. 844, 853 (Bankr. S.D.N.Y. 1994) ("For the same reasons stated with respect to piercing claims, claims based upon successor liability should be asserted by the trustee on behalf of all creditors.").  The rationale adopted by these courts is consistent with the Bankruptcy Code's policy of having a chapter 7 trustee administer the bankruptcy estate for the benefit of all creditors.

In *In re Emoral*, the Third Circuit, finding that a bankruptcy trustee has standing to pursue successor liability claims on behalf of a corporate debtor, stated that "a cause of action that is 'property of the estate' is properly pursued by the bankruptcy trustee because it inures to the benefit of all creditors. This promotes the orderly distribution of assets in bankruptcy,

and comports with 'the fundamental bankruptcy policy of equitable distribution to all creditors that should not be undermined by an individual creditor's claim.'" 740 F.3d at 879 (quoting *Koch Refining v. Farmers Union Cent. Exch., Inc.,* 831 F.2d 1339, 1344 (7th Cir.1987)).[4]  The Third Circuit went on to remark that:

> when examining "common claims against the debtor's alter ego or others who have misused the debtor's property in some fashion," where a claim is a "general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action."

740 F.3d at 879 (quoting *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989)).

In *Emoral*, the Third Circuit provided an answer to the argument of Sterne Agee that there is no Virginia case specifically stating that a corporate entity may pursue a successor liability claim against its alleged successor in interest:

> [I]t may seem strange to hold that a cause of action for successor liability against [its alleged successor entity] is property of Emoral's bankruptcy estate. As a practical matter, it is difficult to imagine a factual scenario in which a solvent Emoral, outside of the bankruptcy context, would or could bring a claim for

---

[4] In *In re Emoral, Inc.*, 740 F.3d 875, 882 (3d Cir. 2014), *cert. denied* 135 S. Ct. 436 (2014), the Third Circuit reviewed cases arising under both New York and New Jersey law, remarking that there was "no dispute that either New Jersey or New York law applies and that the two states' relevant applicable legal standards are identical, rendering a choice-of-law analysis unnecessary." *Id.* at 879 n.2.  New York and Virginia successor liability law are "essentially the same" as well, as found by the United States District Court for the Eastern District of Virginia in *Royall Alliance Assocs., Inc. v. Branch Ave. Plaza, L.P.,* 587 F. Supp. 2d 729, 738 (E.D. Va. 2008), thus making the analysis in *Emoral* even more relevant to this Court's analysis.

successor liability against [its alleged successor entity]. *See Buildings by Jamie, Inc.,* 230 B.R. 36, 42 (Bankr. D.N.J. 2000) (similarly acknowledging in the veil-piercing context that "from a practical standpoint, principals of a solvent debtor will not be compelled to pierce the veil of the very entity they use as a conduit for their personal business," as this would "effectively extinguish their limited liability and expose them to the personal liability that the corporate form is employed to avoid").

Just as the purpose behind piercing the corporate veil, however, the purpose of successor liability is to promote equity and avoid unfairness, and it is not incompatible with that purpose for a trustee, on behalf of a debtor corporation, to pursue that claim. . . . [T]he [individual creditors'] cause of action against [the alleged successor entity] would be based on facts generally available to any creditor, and recovery would serve to increase the pool of assets available to all creditors. Therefore, the District Court appropriately classified that cause of action as a generalized claim constituting property of the estate.

740 F.3d at 881 (citations omitted).

The parties have each cited the Fourth Circuit case of *National American Insurance Co. v. Ruppert Landscaping Co.*, 187 F.3d 439 (4th Cir. 1999). In that case, two insurance companies that had issued payment and performance bonds on behalf of the debtor attempted to assert successor liability claims against a corporation that had purchased some of the debtor's notes and assets. The Fourth Circuit found that the insurance companies lacked standing to pursue the purchasing corporation, finding that such a suit would frustrate the bankruptcy trustee in pursuing a potential fraudulent conveyance action. While the Fourth Circuit did not specifically decide whether a trustee may pursue a successor liability claim for the benefit of the estate, since the trustee in that case apparently asserted a

potential fraudulent conveyance action only, it did give some insight on the

issue.  Just as the Third Circuit expressed in *Emoral*, the Fourth Circuit in

*Ruppert Landscaping* emphasized that the purpose of the bankruptcy process

would be undermined if individual creditors were allowed to engage in

piecemeal litigation against an alleged successor entity. The court noted that:

> [t]o allow selected creditors to artfully plead their way out
> of bankruptcy court would unravel the bankruptcy process and
> undermine an ordered distribution of the bankruptcy estate.
> The goal of bankruptcy is to consolidate the proceeding and
> avoid piecemeal litigation – a goal that would be sacrificed by
> permitting the district court to entertain the merits of the
> [insurance companies'] suit.
>     Reserving the action for the trustee maintains the
> integrity of the bankruptcy proceeding and ensured that
> individual creditors cannot hijack the bankruptcy process.  If it
> were otherwise, there would be a 'multijurisdictional rush to
> judgment whose organizing principle could only be first-come-
> first-served.'

*Id.* at 442 (quoting *American Nat'l Bank v. MortgageAmerica Corp. (In re*

*MortgageAmerica Corp.),* 714 F.2d 1266, 1274 (5th Cir.1983).  This language

from the Fourth Circuit does not support Sterne Agee's argument that a

trustee should not be able to bring a successor liability claim.[5]

---

[5] Sterne Agee relies heavily on the case of *Acme Boot Co. v. Tony Lama Interstate Retail Stores, Inc.*, 929 F.2d 691 (4th Cir. 1994).  The Court has reviewed the unpublished decision of the Fourth Circuit in that case but finds it to be inapposite for two related reasons.  First, it addresses the claim of one single creditor who sought to impose successor liability upon a nondebtor corporation.  Second, and more importantly, the trustee in *Acme Boot* had taken no action to assert a claim of the estate against the alleged successor corporation.  The Fourth Circuit noted in a footnote that "[t]he trustee has taken no action to set aside the transfer of assets as fraudulent, and  there is no evidence that the trustee intends to take any action in this regard.  Therefore, this matter continues to be a matter not involving bankruptcy." *Id*. at *6 n.2.  This Court need not speculate on how the Fourth Circuit might have ruled in *Acme Boot* had the trustee been the party asserting the successor liability claim on behalf of all creditors.

This Court adopts the rationale set forth in *Emoral*, which it finds to be consistent with the Fourth Circuit's decision in *Steyr*, and finds that the Trustee has standing to pursue Counts I, II, and III under § 541 of the Bankruptcy Code. Having found that Virginia recognizes a cause of action for successor liability, and having found that the Trustee has standing to pursue those counts under § 541 of the Bankruptcy Code, the Court need not address whether the Trustee has standing to pursue those counts under § 544 of the Bankruptcy Code.

### Fraudulent transfer claim

In Counts IV and V of the Counterclaim, the Trustee seeks to avoid the transfer of the Debtor's assets to Sterne Agee as a fraudulent transfer pursuant to Bankruptcy Code § 544(b)(1)[6] and Virginia Code § 55-80.[7] Sterne Agee asserts that those claims should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) because the Trustee has failed to sufficiently identify the existence of a qualified creditor under § 544(b) and has failed to

---

[6] Section 544(b)(1), 11 U.S.C. § 544(b)(1), provides:
   Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

[7] Va. Code Ann. § 55-80 provides:
   Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, every suit commenced or decree, judgment or execution suffered or obtained and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.

plead the elements of a claim under Virginia Code § 55-80 with sufficient

particularity.

Sterne Agee maintains that the Trustee has failed to state a

fraudulent conveyance claim under § 544(b), which allows a trustee to avoid a

transfer of an interest of the debtor "that is voidable under applicable law by

a creditor holding an unsecured claim that is allowable under section 502 of

[the Bankruptcy Code] . . . ." 11 U.S.C. § 544(b).  More specifically, Sterne

Agee contends that the Counterclaim does not plead the existence of an

unsecured creditor who existed at the time of the transaction giving rise to

the challenged transfer, who holds a claim allowable under § 502 and who,

under nonbankruptcy law, could avoid the transfer.  Sterne Agee contends

that all of the claims that have been asserted on behalf of various creditors

identified in the Counterclaim, as represented by proof of claim filed in the

case, are objectionable or otherwise not allowable under § 502 and that

therefore the Trustee has not satisfied the elements of § 544(b) and has no

standing to assert the § 544(b) claims.

In the Counterclaim, the Trustee states that the transaction he is

seeking to set aside took place at the end of 2011 and was designed to avoid

payment to creditors while transferring all of the value of the Debtor to

Sterne Agee and to the principals/shareholders of the Debtor. (Counterclaim

¶ 7).  The Trustee alleges that the Class Action lawsuit was pending against

the Debtor in federal court in New Jersey, based upon an allegation that the

Debtor took part in a fraudulent initial public offering which resulted in the January 11, 2011, sale by the Debtor of $16.5 million of stock in a defunct company. (Counterclaim ¶ 29).  The Trustee alleges that Sterne Agee and the principals of the Debtor entered into the Purchase Agreement with the intent of transferring all of the Debtor's assets away from its creditors (Counterclaim ¶ 35).  Construing the facts in favor of the Trustee, the creditors taking part in the Class Action lawsuit were in existence at the time of the November 2011 transfer to Sterne Agee.

The Trustee is not required to identify specific creditors in order to have standing or state a claim under § 544(b).  *See Schnelling v. Crawford (In re James River Coal Co.)*, 360 B.R. 139, 160 (Bankr. E.D. Va. 2007) ("The amended complaint alleges that at all relevant time, the Debtors had creditors with claims that arose before or within a reasonable time after the challenged transactions.  That alone should be sufficient."); *The Responsible Person of Musicland Holding Corp. v. Best Buy Co.(In re Musicland Holding Corp.)*, 398 B.R. 761, 780 (Bankr. S.D.N.Y. 2008) ("The Court has not been able to locate a case in this district supporting the proposition that the plaintiff must name the qualifying creditor in the complaint, or suffer dismissal."); *Giuliano v. U.S. Nursing Corp. (In re Lexington Healthcare Grp., Inc.)*, 339 B.R. 570, 576 (Bankr. D. Del. 2006) ("The Court agrees with the Trustee and those cases which hold that the Trustee need not identify the name of a specific creditor on which the Trustee relies.").  The Trustee's

Counterclaim alleges the existence of creditors holding unsecured claims.

(Counterclaim ¶¶ 32-34), and the Court is required to "accept as true all of

the factual allegations contained in the complaint," *E.I. DuPont de Nemours*

*and Co. v. Kolon Inds., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and "draw all reasonable

inferences in favor of the plaintiff." *E.I. DuPont de Nemours and Co. v. Kolon*

*Inds., Inc.*, 637 F.3d at 440.[8]  Therefore, the Court finds that the Trustee has

sufficiently pled the existence of a creditor with a claim allowable under § 502

and has stated a claim under § 544(b).

Sterne Agee contends that the Trustee's Counterclaim under Va. Code

§ 55-80 should be dismissed because the Trustee failed to plead with

specificity the elements of "actual intent" required by that statute.  Sterne

Agee points to Rule 9(b) of the Federal Rule of Civil Procedure 9(b), Fed. R.

Civ. P. 9(b), made applicable by Rule 7009 of the Federal Rules of Bankruptcy

Procedure, Fed. R. Bankr. P. 7009, which requires a party alleging fraud to

state the circumstances with particularity.  The Court finds that the Trustee

has pled fraud with sufficient specificity.

Fraud for purposes of Virginia Code § 55-80 may be proven by

circumstantial evidence.  "[B]ecause of the difficulty of establishing actual

---

[8] Stern Agee contends that this Court should consider various documents and
information outside of the Counterclaim, despite the general rule in the Fourth Circuit that
"extrinsic evidence should not be considered at the 12(b)(6) stage . . . ."  *Am. Chiropractic*
*Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).  Were the Court to do so,
it could take notice that numerous unsecured claims have been filed in this case, as reflected
by the claims register, and that no objections have been filed in connection with those claims.
Under § 502(a) of the Bankruptcy Code, a claim is deemed allowed unless a party in interest
objects.

intent, evidence of fraud may be, and generally must be, circumstantial." *Fox Rest Assocs., L.P. v. Little*, 282 Va. 277, 284, 717 S.E.2d 126, 131 (2011) (quoting *Hyman v. Porter (In re Porter)*, 37 B.R. 56, 63 (Bankr. E.D. Va. 1984)). Therefore, Virginia courts rely on the badges of fraud to establish a *prima facie* case of fraudulent conveyance under Va. Code Ann. § 55-80.  The badges of fraud include:

> (1) retention of an interest in the transferred property by the transferor; (2) transfer between family members for allegedly antecedent debt; (3) pursuit of the transferor or threat of litigation by his creditors at the time of the transfer; (4) lack of or gross inadequacy of consideration for the conveyance, (5) retention or possession of the property by the transferor; and (6) fraudulent incurrence of indebtedness after the conveyance.

*Fox Rest. Assoc.,* 282 Va. at 284, 717 S.E.2d at 131 (citing *Hyman v. Porter (In re Porter)*, 37 B.R. 56, 63 (Bankr. E.D. Va. 1984)); *see also Gold v. Laines (In re Laines)*, 352 B.R. 397 (Bankr. E.D. Va. 2005).  A *prima facie* case may be established by demonstrating a single badge of fraud; insolvency in combination with other circumstances may sufficiently show fraudulent intent as well.  *Hyman v. Porter*, 37 B.R. at 63.  This Court has held that "[f]raud should be inferred when the facts and circumstances are such as would lead a reasonable man to the conclusion that a debtor has attempted to withdraw his property from the reach of his creditors with the intent to prevent them from recovering their just debts." *Id.*

The Trustee has to plead only a single badge of fraud to establish his *prima facie* case against Sterne Agee.  The Trustee has pled at least two badges of fraud.  He has alleged that the shareholders of the Debtor retained an interest in the transferred assets by (i) receiving a portion of the purchase price directly from Sterne Agee disguised as retention bonuses or loan repayments (Counterclaim ¶ 21), (ii) having loans owed to the Debtor by the officers and directors forgiven or transferred to Sterne Agee (Counterclaim ¶ 22), and (iii) obtaining employment with Sterne Agee (Counterclaim ¶¶ 10, 11, 13-15).  The Trustee also alleges that the Debtor retained an interest in the transferred assets by receiving a portion of the purchase price as stock in Sterne Agee Group, Inc.  (Counterclaim ¶¶ 20, 23).  The Trustee alleges a second badge of fraud by asserting that the Debtor faced the threat of litigation by its creditors at the time of the transfer, including the members of the Class Action lawsuit, whose losses were sustained in early 2011. (Counterclaim ¶¶ 28-29).

In addition to these two badges of fraud, the Trustee asserts that the Debtor was left insolvent after it transferred its assets to Sterne Agee, because thereafter it had no remaining assets with which to pay its significant liabilities.  (Counterclaim ¶ 7).  The Trustee alleges that the Debtor's officers, directors, and shareholders entered into the transaction with Sterne Agee "with the goal of separating A&S's assets from its significant liabilities for the benefit of Sterne Agee and A&S's and ASIC's

principals/shareholders." (Counterclaim ¶ 7).  The Trustee has sufficiently alleged at least two badges of fraud establishing the fraudulent intent necessary under Virginia Code § 55-80, along with other facts recognized as relevant by Virginia Courts.

Sterne Agee also contends that the Trustee has failed to plead that Sterne Agee had notice of the Debtor's fraudulent intent in transferring its assets to Sterne Agee.  However, the Trustee alleged that "Sterne Agee and the principals/shareholders of A&S and ASIC completed a transaction at the end of 2011 with the goal of separating A&S's assets from its significant liabilities for the benefit of Sterne Agee and A&S's and ASIC's principals/shareholders" (Counterclaim ¶ 7) and that "Sterne Agee and the principals of the Debtor and ASIC entered into the Purchase Agreement with the intention of transferring all assets of A&S away from A&S's creditors." (Counterclaim ¶ 35).  The Trustee further alleges that Sterne Agee had notice of the Debtor's fraudulent intent and, in fact, knowingly participated in the fraudulent transfer by (i) disguising payment of a portion of the purchase price directly to shareholders as retention bonuses (Counterclaim ¶ 21); (ii) keeping a Sterne Agee employee and office manager, Donald Newlin, in place as a director of the Debtor for over three years following the transaction (Counterclaim, ¶ 16); and (iii) setting up an escrow fund with a portion of the purchase price (Counterclaim ¶ 23).

The allegations asserted by the Trustee in the Counterclaim satisfy the *Twombly* and *Iqbal* pleading standards for stating a claim under Bankruptcy Code § 544(b) and Virginia Code § 55-80, and also satisfy the pleadings standard of Rule 9(b).[9]  As this Court has explained, "[i]f a fraudulent transfer claim details the transfers alleged to be fraudulent, the reasons the transfers are fraudulent, and the roles of the defendants in the transfers, it has been pled with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b)."  *James River Coal Co.*, 360 B.R. at 162.  The Counterclaim details that the Purchase Agreement and related documents and transfers constitute the transfers that are alleged to be fraudulent.  The Counterclaim states the reasons the transfers are fraudulent, states that they were done with the intent to hinder, delay and defraud creditors, identifies the specified badges of fraud that support an inference of intent, and alleges that Sterne

---

[9] Even though the Counterclaim meets the heightened pleadings standard of Rule 9(b), the Court finds that the Trustee is entitled to a relaxed standard in pleading his fraudulent transfer claim under Bankruptcy Code § 544 and Virginia Code § 55-80.  *See Schnelling v. Crawford (In re James River Coal Co.)*, 360 B.R. 139, 163 n.15 (Bankr. E.D. Va. 2007).  In *James River Coal*, the Court pronounced that it was "disingenuous for the defendants to attempt to shield themselves from liability based upon the allegation that the Trustee has failed to plead with sufficient particularity where, as here, the defendants possess knowledge regarding the subject transactions and the Trustee has limited access to such information without discovery."  *Id*. at 163.  In addition, the Court noted that "[i]n the case of a fraudulent transfer, the particularity requirements of Rule 9(b) are more relaxed. . . .[and] [t]his requirement is relaxed even more when the plaintiff is a third party, such as a trustee, because a third party generally has less information on which to base its allegation."  *Id*., 360 B.R. at 163, n.15 (citations omitted).

Sterne Agee suggests that the Trustee is not entitled to a relaxed pleading standard under Rule 9(b) because he engaged counsel who represented the petitioning creditor in the involuntary bankruptcy filing against the Debtor and therefore may have had some prior knowledge of the fraudulent transfer.  The Court does not have before it any evidence as to what Trustee's counsel may or may not have learned through its representation of the petitioning creditor relevant to this action.  Therefore, despite the fact that the Trustee has fully satisfied the requirements of Rule 9(b) in the Counterclaim, he would still be entitled to the relaxed standard applied to trustees bringing fraudulent transfer actions.

Agee actively participated in the fraudulent transfer and was on notice of the same.

The Trustee has standing to bring the successor liability claims against Sterne Agee because such claims constitute property of the bankruptcy estate.  The Trustee has sufficiently alleged all necessary elements of his fraudulent transfer claim under 11 U.S.C. § 544(b) and Virginia Code § 55-80 and has pled sufficient facts to state a claim.

For the reasons set forth herein, Sterne Agee's Motion to Dismiss is denied.  A separate order will issue.

Signed: April 8, 2015

_____/s/ Keith L. Phillips_____
United States Bankruptcy Judge

ENTERED ON DOCKET: Apr 8 2015

Copies:

Jennifer McLain McLemore, Esq.
Christian & Barton, LLP
090 East Main Street, Suite 1200
Richmond, VVA 23219
*Attorney for Sterne, Agee & Leach, Inc., and*
*The Trust Company of Sterne Agee, Inc., as Escrow Agent*

Christian K. Vogel, Esq.
LeClairRyan, A Professional Corporation
951 East Byrd Street, 8th Floor
Richmond, VA 23219
*Attorney for the Chapter 7 Trustee*

J. Leland Murphree
Maynard, Cooper & Gale, P.C.
1901 Sixth Avenue North
2400 Regions Harbert Plaza
Birmingham, AL 35203

Bruce E. Robinson
P.O. Box 538
415 E. Atlantic Street
South Hill, VA 23970-0538
*Chapter 7 Trustee*

Office of the U.S. Trustee
701 E. Broad Street, Suite 4304
Richmond, VA 23219